**Robyn L. WHITE, Plaintiff,**

v.

**WELLS FARGO GUARD SERVICES, et al., Defendants.**

Civ. No. 94–D–875–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Sept. 29, 1995.

Joseph Brady Lewis, Montgomery, AL, for plaintiff.

W. Wheeler Smith, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendant Wells Fargo Guard Services' motion for summary judgment filed February 21, 1995. The plaintiff responded in opposition on March 13, 1995, to which the defendant replied on March 31, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendant's motion is due to be granted in part and denied in part.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the plaintiff alleges a violation of 42 U.S.C. § 2000e, Title VII.[1] Personal jurisdiction and venue are not contested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

---

1. The plaintiff has exhausted her administrative remedies concerning the disparate treatment claim as she filed a claim with the Equal Employment Opportunity Commission within 180 days of the last discriminatory act and has filed this judicial action within 90 days of receiving her right to sue letter from the Equal Employment Opportunity Commission.

the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106

S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

## FINDINGS OF FACT

This action is composed of a disparate treatment claim based on gender discrimination and a sexual harassment claim. The issues are whether Robyn White (hereafter "Ms. White") was denied a promotion because she refused to "go out" with her supervisor and whether she was denied a promotion based on her sex.

Ms. White was employed by Wells Fargo Guard Services (hereafter "Wells Fargo") on June 1, 1993, as a security guard. On August 2, 1993, Ms. White was promoted from her security guard position to that of sergeant, a supervisory position. Thereafter, sometime in August 1993,[2] a higher supervisory position, that of lieutenant site supervisor, became open, and it is this position which is the center of this controversy. On October 4, 1993, the position of lieutenant site supervisor was given to a male, Raymond Echols (hereafter "Mr. Echols"). Aff. of Robyn White. Ms. White alleges that she was denied this promotion to Lieutenant Site Supervisor, because (1) she was sexually harassed by her supervisor and (2) she is a female.

Specifically, she alleges that during the period of time between the first part of August, 1993, and the first part of October, 1993, she was sexually harassed by her then-supervisor, Captain Roy Patton (hereafter "Mr. Patton"). Mr. Patton allegedly suggested to her that she "could grow within the

---

2. Wells Fargo asserts that the job became open in October 1993; however, they provide no proof thereof other than the mere assertion. The court stresses that at this juncture, the court construes the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S.

144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, the court's function at this point is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

company" if she would "go out with [him]." Depo. of Robyn White at 30–31. Ms. White refused Mr. Patton's offers and thereafter, was turned down for the promotion.

Wells Fargo asserts that Ms. White is estopped from raising the issue of the sexual harassment, because she did not specifically bring forth this claim before the Equal Employment Opportunity Commission. Ms. White concedes this point; however, she asserts that sexual harassment by her supervisor should be considered as additional evidence of the intent and motive to discriminate.

Regarding her disparate treatment claim, Ms. White claims that she was more qualified than Mr. Echols. She also alleges that she had neither been approved nor hired by anyone else at the time the promotion was open, and thus, she was available for the promotion which was filled on October 4, 1993. She does admit that while she was employed by Wells Fargo, she had applied for a position at Tuskegee University. Her qualifications were initially approved by Tuskegee University on or about October 5, 1993, and she was accepted for employment at Tuskegee University on or about October 14, 1993, with her employment to begin on October 18, 1993. Aff. of Robyn White.

On the other hand, Wells Fargo not only asserts that Mr. Echols was more qualified than Ms. White, but also, they contend that because Ms. White had accepted employment with Tuskegee University, the position was given to Mr. Echols. In support, Wells Fargo states that Barry White (hereafter "Mr. White"), who is Ms. White's brother and at the time was employed by Wells Fargo, informed them that Ms. White had accepted a position with the Tuskegee University Campus Police. Aff. of Ulaunda Y. Poole. Thereafter, David Hicks (hereafter "Mr. Hicks"), branch manager for Wells Fargo,

allegedly verified Mr. White's statement by calling Tuskegee University. However, Mr. White denies that he ever made the alleged statement that Ms. White had accepted employment elsewhere. Aff. of Barry White.

Ms. White seeks monetary relief and reinstatement of her former job. However, Wells Fargo asserts that she was not damaged, because she voluntarily left Wells Fargo and thereafter, took a job at slightly less pay than she was earning at Wells Fargo. Specifically, Wells Fargo contends, and Ms. White admits, that her pay at Wells Fargo as a sergeant was $6.00 per hour, whereas, her pay at Tuskegee University is $5.73 per hour. Depo. of Robyn White at 6, 16, 18. Further, Tuskegee University also provides her medical benefits through Blue Cross and Blue Shield and added compensation of time and a half for overtime. *Id.* However, Ms. White contends she has suffered embarrassment, humiliation, mental and emotional distress and anguish, because her employment opportunities at Wells Fargo were curtailed. In support, she alleges that she desired to remain employed at Wells Fargo, and she wished to be promoted to a position for which she was qualified.

## DISCUSSION

### A. *MOTION TO STRIKE*

■ Before proceeding to the issues presented in the summary judgment motion, the court will first address Ms. White's motion contained in her response to summary judgment to strike portions of Ulaunda Y. Poole's affidavit, found in paragraphs 5, 6 and 7, on the grounds that these matters in the affidavit are outside the personal knowledge of the affiant.[3] Specifically, Ms. White asserts that the following should be stricken:

---

**3.** The court recognizes that an affidavit which fails to meet the standards of Rule 56(e) of the *Federal Rules of Civil Procedure* is subject to a motion to strike. *Southern Concrete Co. v. United States Steel Corp.,* 394 F.Supp. 362, 380 (N.D.Ga. 1975), *aff'd,* 535 F.2d 313 (5th Cir.1976). The motion to strike should state precisely the portions of the affidavit to which objection is being made, and the grounds therefor. *Id.; Olympic Ins. Co. v. H.D. Harrison, Inc.,* 418 F.2d 669, 670

(5th Cir.1969) (Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)). The court further notes that if no objection is made to inadmissible statements in an affidavit then the court may consider them on a motion for summary judgment. *Harrison,* 418 F.2d at 670; *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 (2d Cir.1988).

5. ... Ms. White's brother, Barry White, who is also an employee of Wells Fargo Services, informed Mr. Raymond Echols that Robyn White had accepted a position as an employee with Tuskegee University, and that he was interested in filling her then current position as a Sergeant after she left. (See Attachment I.) Upon being informed of this Mr. David Hicks, Branch Manager, called the client to verify Mr. White's statement. It was confirmed the Ms. White had been hired by the client and was scheduled to begin employment within the next couple of weeks. Due to the fact that Ms. White had accepted another job, the Site Supervisor's position was given to Mr. Echols. (See Attachment II.)

6. ... Mr. Echols had over five years prior experience in law enforcement, serving over three years as a police officer and over two years as a deputy sheriff. (See Attachment III.) Claimant had only one month's prior experience at National Security as a Dispatcher. (See Attachment IV.)

7. Ms. White had accepted other employment and did not express interest in continuing employment with Wells Fargo Guard Services as a Site Supervisor or in any other capacity.

Pl.'s Resp. to Def.'s Mot. for Summ. J.; *see also* Aff. of Ulaunda Y. Poole. The motion to strike is contested by the defendant. Specifically, the Wells Fargo asserts that the statements in its "brief constitute records/statements obtained and/or filed in the course of [d]efendant's business or as part of Wells Fargo's investigative record, or the EEOC record of [p]laintiff's claim. All statements were made by employees of Wells Fargo. Such records/statements express facts that would be admissible in evidence." [4] Def.'s Reply to Pl.'s Resp. at 2.

■ Ms. Poole's affidavit was filed in support of Wells Fargo's motion for summary judgment, and as such, it must comport with the requirements of the *Federal Rules of Civil Procedure.* Rule 56(e) of the *Federal Rules of Civil Procedure* provides that an affidavit in support of a motion for summary judgment "shall be made on *personal knowledge,* shall set forth such facts as would be *admissible in evidence,* and shall show affirmatively that *the affiant is competent to testify to the matters stated therein.*" (emphasis added). Because affidavits proffered in support of a motion for summary judgment must be based upon personal knowledge, an affidavit based upon "information and belief" is insufficient as a matter of law. *Automatic Radio Mfg. Co. v. Hazeltine Research,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950); *Reeves v. Thigpen,* 879 F.Supp. 1153, 1164 (M.D.Ala.1995).

■ Further, the court may consider only that evidence that would be admissible at trial.[5] *Soles v. Board of Comm'rs of Johnson County,* 746 F.Supp. 106, 110 (S.D.Ga. 1990) (citing *Sires v. Luke,* 544 F.Supp. 1155 (S.D.Ga.1982); *Samuels v. Doctors Hosp., Inc.,* 588 F.2d 485, 486 n. 2 (5th Cir.1979)). In determining admissibility under Rule 56, the same standards apply as at trial. *Soles,* 746 F.Supp. at 110 (citing *Munoz v. International Alliance of Theatrical Stage Employees,* 563 F.2d 205, 207 n. 1 (5th Cir.1977).) Thus, in ruling upon summary judgment mo-

---

4. The court construes Wells Fargo's response as setting forth the business records exception to the hearsay rule. Rule 803 of the *Federal Rules of Evidence* provides the applicable law:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

...

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, *made at or near the time* by, or from information transmitted by, a person with knowledge, if kept *in the course of a regularly conducted business activity,* and if it was the regular practice of that

business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witnesses.

Fed.R.Evid. 803 (emphasis added).

5. The court notes that even if an affidavit does contain some inadmissible material, the court is not required to strike the entire affidavit. *Southern Concrete Co. v. United States Steel Corp.,* 394 F.Supp. 362, 380 (N.D.Ga.1975), *aff'd,* 535 F.2d 313 (5th Cir.1976) (citations omitted). The court may strike or disregard the inadmissible portions and consider the rest of the affidavit. *Id.; Lee v. National Life Assurance Co.,* 632 F.2d 524, 529 (5th Cir.1980) (citations omitted).

tions, the court will refuse to consider inadmissible hearsay.[6] *Soles,* 746 F.Supp. at 110 (citation omitted).

■ Although the facts and testimony contained in paragraphs 5, 6 and 7 of the affidavit are relevant to issues presented in this case, they are inadmissible at trial. The court finds that these paragraphs assert and rely on the truth of charges about which the affiant does not claim to know anything. These statements of Ms. Poole, based on incorporated memorandums from different people, clearly were not made from personal knowledge but were based on the memorandums which were hearsay and are inadmissible in evidence.[7] Ms. Poole was not present at any of these events and no affidavits were offered by those who had been present. Statements such as here which are essentially conclusory and lacking in specific facts are inadequate to satisfy the movant's burden. Ms. Poole merely states the substance of the written instruments, and this is not sufficient.[8] Because the above mentioned statements of the affidavit show that they were not made on personal knowledge and that the affiant is not competent to testify as to the matters stated therein, the court will not consider those statements in its analysis of the motion for summary judgment.

■ Ms. White also moves the court to strike the following materials: (1) memorandum of February 14, 1994 to Ulaunda Poole from Raymond Echols; (2) memorandum of February 14, 1994 to Ulaunda Poole from David Hicks; (3) application for employment submitted by Raymond Echols; (4) application for employment submitted by Robyn White; (5) list of site supervisors of the defendant; (6) excerpt of handbook for security officers of Wells Fargo; (7) Equal Employment Opportunity acknowledgment letter;[9] (8) Tuskegee University personnel action form. In support, the plaintiff asserts that the above unsworn documents impermissibly put before the court matters not contemplated by Rules 56(c) and 56(e) of the *Federal Rules of Civil Procedure.* Wells Fargo again generally responds that the statements in its "brief constitute record/statements obtained and/or filed in the course of [d]efendant's business or as part of Wells Fargo's investigative record, or the EEOC record of [p]laintiff's claim. All statements were made by employees of Wells Fargo. Such records/statements express facts that would be admissible in evidence." Def.'s Reply to Pl.'s Resp. at 2.

■ In addition to requiring that affidavits be "made on personal knowledge", the court notes that Rule 56(e) also requires that *"[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall*

---

**6.** The court recognizes that "it is the policy of [R]ule 56(e) to allow the affidavit to contain evidentiary matter, which if the affiant were in court and testified on the witness stand, would be admissible as part of his testimony." *American Sec. Co. v. Hamilton Glass Co.,* 254 F.2d 889, 893 (7th Cir.1958); *see also H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir. 1991). Thus, hearsay statements that would be admissible at the trial as exceptions to the hearsay rule may be contained in the affidavit. *Airtemp,* 934 F.2d at 454–55.

**7.** The court finds that these memorandums do not fall within the business records exception to the hearsay rule as clearly they were not *made in the ordinary course of Wells Fargo's regularly conducted business activity.* Rather, they were made to support Wells Fargo's assertions made in response to the EEOC claim filed by Ms. White. This conclusion is evident as the memorandums are dated February 14, 1994 which is one week after Wells Fargo sent its response letter to the EEOC. Further, the court finds that the memorandums were not *made at or near the time* of the events described therein. These

events occurred in October 1993 and, as stated above, the memorandums are dated February 14, 1994. The court also finds that the records/statements are not vicarious admissions pursuant to Rule 801(d)(2)(D) of the *Federal Rules of Evidence* as they are not against the interest of Wells Fargo at this juncture.

**8.** In fact, paragraphs 5, 6 and 7 of Ms. Poole's affidavit are copied virtually verbatim from a letter written by her to the EEOC, which letter was dated February 7, 1994 and was Wells Fargo's response to the EEOC claim filed by Ms. White. Yet, the memorandums attached to Ms. Poole's affidavit in support thereof are dated February 14, 1994, a week *after her letter to the EEOC.* Thus, the court is still confused as to on what her statements in the affidavit are based.

**9.** The court's analysis does not include the Equal Employment Opportunity acknowledgment letter as this document was not pertinent to the court's decision in this order.

be attached thereto...." (emphasis added). The court finds that Wells Fargo has merely attached to Ms. Poole's affidavit unauthenticated documentary exhibits, and further has failed to address the specific questions of authentication and admissibility. The court notes that exhibits used by a party at summary judgment stage must be authenticated at that time. *See Mustfov v. Superintendent of Chicago Police Dep't,* 733 F.Supp. 283, 287 (N.D.Ill.1990) (citing *Wells v. Franzen,* 777 F.2d 1258, 1262 (7th Cir.1985)). The documents at issue here were not sworn or certified, as required by Rule 56(e), and therefore, the court may not consider them. *See Gordon v. Watson,* 622 F.2d 120, 122 (5th Cir.1980) (citations omitted). Accordingly, because certain statements in the affidavit were not based on personal knowledge and Wells Fargo's attachments thereto were inadequate as a matter of law due to Wells Fargo's failure to submit sworn or certified statements, Ms. White's motion to strike is due to be granted.

■ However, the court stresses that the Supreme Court of the United States has concluded that Rule 56 of the *Federal Rules of Civil Procedure* which governs the grant of summary judgment motions contains "no express or implied requirement ... that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Medlin v. Palmer,* 874 F.2d 1085, 1089 (5th Cir.1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (emphasis added)). The United States Supreme Court further reasoned that

... regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported

claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

*Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–54. Therefore, the court has a duty to determine whether Ms. White has presented facts which support her claim, regardless of the findings concerning her motion to strike.

The court, before discussing the law as it applies to Ms. White's allegations, makes the following general conclusion of law:

■ Roy Patton and David Hicks are "agents" of defendant for Title VII purposes. Title VII imposes liability on an employer for the improper acts of its agents. 42 U.S.C. § 2000e(b). *See also Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1559–60 (11th Cir.1987) (holding that an agent is one who occupies a supervisory position with the authority to alter the terms and conditions of an employee's employment).

The court will now rule on the issues presented in the summary judgment motion submitted by Wells Fargo. Specifically, Wells Fargo moves for summary judgment on Ms. White's claims of (1) sexual harassment and (2) disparate treatment. The court will address each argument in turn.

### B. *Sexual Harassment*

Title VII permits an aggrieved employee to seek relief in federal court provided the complainant has (1) filed timely charges of employment discrimination with the Equal Employment Opportunity Commission (hereafter "EEOC") and (2) receives and acts upon the EEOC's statutory notice of the right to sue. 42 U.S.C. § 2000e–5(f)(1); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the discriminatory action of which he or she complains. *EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 110, 108 S.Ct. 1666, 1668, 100 L.Ed.2d 96 (1988) (*citing* § 706(e), 42 U.S.C. § 2000e–5(e)); *see also* 29 C.F.R. § 1601.13(a)(1).[10]

---

**10.** 42 U.S.C. § 2000e–5(e) provides in relevant part:

[a] charge under this section shall be filed within one hundred and eighty days after the

alleged employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the

As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his or her EEOC charge. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). The Eleventh Circuit has held that failure to file charges with the EEOC within the 180 day time period results in a bar of claims contained in the untimely filed charge. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994); *see also Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992 (11th Cir.1982); *Durham v. Bleckley County School Sys.*, 680 F.Supp. 1555, 1558 (M.D.Ga.1988).

Notwithstanding the rigid tone of the general rule stated in *Ross,* equitable principles may forestall a strict application thereof. In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the United States Supreme Court held that:

> ... filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.

*Zipes,* 455 U.S. at 392, 102 S.Ct. at 1131.

Wells Fargo specifically denies that Ms. White timely filed sexual harassment charges with the EEOC. Def.'s Brief in Supp. of Mot. for Sumn. J. at 7–8. Therefore, Ms. White bears the burden of proving compliance with the requisite preconditions. *Jackson,* 678 F.2d at 1010. The court finds that Ms. White has failed to meet this burden, because the she admits that the sexual harassment claim was not specifically made the subject of a claim before the EEOC. Pl.'s Resp. to Mot. for Summ. J.

Therefore, in light of *Ross* and *Zipes,* the court must decide whether equity requires the court to ignore Ms. White's

untimely filing of her charge with the EEOC and entertain her action nonetheless. In *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295 (5th Cir.1979), the previous Fifth Circuit noted three situations in which equity may toll or interrupt the section 2000e–5(e) period. First, the *Chappell* court found that the time period may be tolled during the pendency of an action before a state tribunal which has subject matter jurisdiction over the action. *Id.* at 1302. Second, the 180–day requirement may be deferred until the complaining party knew or should have known the facts which precipitate the Title VII claim. *Id.* at 1303.[11] Third, where the EEOC misleads a complainant regarding the nature of his rights under Title VII it is appropriate to equitably modify the time requirement for filing charges with the EEOC. *Id.*

A close look at the facts of this case reveals that Ms. White's disposition does not fall within either of the categories enumerated above. No cause of action concerning this case is currently pending in state court. Also, Ms. White does not allege that she was unaware of the facts giving rise to this action at the time she was discharged. Finally, Ms. White neither contends nor is there any evidence to support a conclusion that the EEOC misled her regarding her rights under Title VII.

The court further will inquire into the nature of the complaints, because the scope of a civil complaint is limited to the scope of the EEOC investigation that can be expected to grow out of the discrimination charge. *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985) (citations omitted); *Brown v. Walt Disney World Co.*, 805 F.Supp. 1554, 1558 (M.D.Fla.1992) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)). Therefore, if the additional charges in the civil complaint arise naturally and logically from the facts presented to the EEOC, they are related to the

---

person against whom the such charge is made within ten days thereafter ...

11. In *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 930 (5th Cir.1975), the court stated that the rationale underlying the suspension of the 180–day requirement is that it is unfair to

allow a defendant to conceal facts that support the plaintiff's cause of action and then to rely on the statute of limitations to bar the suit when a duly diligent plaintiff was unable to discover those facts.

original charge. *Brown,* 805 F.Supp. at 1558 (citing *Vuyanich v. Republic Nat'l Bank of Dallas,* 409 F.Supp. 1083 (N.D.Tex.1976)). From a practical standpoint, one of the most important considerations is "whether the defendant had sufficient notice from the administrative charge of the alleged kinds and areas of discrimination...." *Brown,* 805 F.Supp. at 1558 (quoting *Jiron v. Sperry Rand Corp. (Sperry–Univac),* 423 F.Supp. 155, 159 (D.Utah 1975)).

■■■ The court finds that the additional allegation of sexual harassment averred in Ms. White's civil complaint does not arise naturally and logically from the facts presented to the EEOC as to give the defendant notice of the harassment claim.[12] Accordingly, Ms. White has raised a new kind of discrimination in her civil complaint, since the claims do not even describe the same conduct or implicate the same individuals. *See Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir.1994) ("The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals.*" (emphasis in original; citations omitted)). The court also stresses that Ms. White did not provide all the relevant, available information to the EEOC. *See Wade v. Secretary of Army,* 796 F.2d 1369, 1377 (11th Cir.1986) ("The court must keep in mind that the purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer. Good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires." (citations omitted)). Here, Ms. White failed to even mention facts which could arise into a sexual harassment claim and did not even refer to the individuals participating in the alleged harassment. As a result of the fore-

going analysis, the court concludes that the harassment issue was not included in a reasonable investigation of the administrative complaint, and therefore, Ms. White has not properly invoked the court's jurisdiction concerning the sexual harassment claim.

### C. *Disparate Treatment*

■■■ Title VII forbids discrimination on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge, and promotion. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1526 (11th Cir.1992)).[13] The theory of "disparate treatment" has been stated by the Supreme Court of the United States as

> the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. [citation omitted]. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977). Thus, the essence of disparate treatment is different treatment: that blacks are treated differently than whites, women differently than men.

■■■ In order for a plaintiff-employee to prevail on a Title VII claim he or she must show that the employer intentionally discriminated against him or her when making the employment decision(s) which gave rise to the suit. *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994) (citing *EEOC v. Reichhold Chemicals, Inc.,* 988 F.2d

---

**12.** Ms. White alleged in her EEOC complaint that she suffered discrimination in violation of Title VII because of her sex. There is no evidence in her complaint to the EEOC that she alleged she was harassed.

**13.** 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides: "It shall be an unlawful employment prac-

tice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

1564, 1570 (11th Cir.1993)). While direct proof of discriminatory intent may be preferred, it is not a *sine qua non. Teamsters,* 431 U.S. at 334–40, 97 S.Ct. at 1853–57. In cases of alleged discrimination not supported by direct proof, such as the present action, but rather by circumstantial evidence, the plaintiff-employee must first demonstrate a prima facie case of unlawful discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under the *McDonnell Douglas* and *Burdine* framework,[14] the plaintiff must first raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). To satisfy this burden in a failure-to-promote case, the plaintiff must show: (1) that he or she belongs to a protected class; (2) that he or she applied for and was qualified for the position for which the employer was seeking applicants; (3) that he or she was denied the promotion; and (4) that an another equally or less qualified individual outside the protected class received the promotion. *Batey,* 24 F.3d at 1334 n. 11 (citing *Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)). The plaintiff also may establish the fourth element of the prima facie case by showing that the position remained open. *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073 (11th Cir.1995).

In alleging sex discrimination, Ms. White is within a protected group as defined by Title VII. Regarding the second element of the *McDonnell Douglas* standard, Ms. White does not assert that she specifically expressed an interest in the promotion, rather she states "I learned of the opening for the position of Lieutenant Site Supervisor on October 4, 1993, the day that Lieutenant Anthony Daniels was terminated and Ray-

mond Echols was appointed to that position." Aff. of White. The court finds that a plain reading of this statement indicates that the plaintiff first learned of the promotion at the same time the position was filled. The court further finds that the evidence reveals that the plaintiff has failed to file any documents whatsoever with the court stating that she applied for the promotion.

However, the Eleventh Circuit has determined that an employer has a duty to consider all those who reasonably might be interested in a promotion, as well as those who heard of the opening and expressed an interest. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1133–34 (11th Cir. 1984). Otherwise, the use of notice procedures would result in vacancy information being available to only one segment of a work force, and would place no check on individual biases. *Id.* In *Carmichael,* the court stated that a plaintiff makes out a prima facie case of employment discrimination in promotions as long as he establishes that the company had some reason or duty to consider him for the post. *Id.* The court stressed that an employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the plaintiff was uninterested in the job, because when the plaintiff had no notice of or opportunity to apply for the job, such a reason for rejection is legally insufficient and illegitimate. *Id.* The court concluded that it was not necessary in making out a prima facie case of employment discrimination in promotions, for a black employee to show that he had expressed interest in a specific job where his employer used no formal procedures for posting notice of available promotions or for determining who would be offered promotion. *Id.* at 1134. Therefore, since Wells Fargo has failed to present any evidence that it required a formal application for the promotion at issue, the court finds that Ms. White does not have to prove that she expressed an interest in the promotion.

**14.** The Supreme Court of the United States adopted this analysis to implement "[t]he language of Title VII," which "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823.

Also regarding the second element, Ms. White must prove that she was qualified for the promotion. Wells Fargo does not contend that she was not qualified for the job of lieutenant site supervisor. Rather, Wells Fargo contends a more qualified person was given the job. Therefore, the court finds that Ms. White was qualified for the position which the promotion entailed, and the court will focus its analysis on the final element contained in the *McDonnell Douglas* framework.

Wells Fargo contends that "Mr. Echols had over five years prior experience in law enforcement, serving over three years as a police officer and over two years as a deputy sheriff." *See* Def.'s Brief in Supp. of Mot. for Summ. J. at 4. Wells Fargo further alleges that Mr. Echols graduated from the Montgomery, Alabama Police Academy. *Id.* However, these statements do not appear in affidavit form, but rather appear as an unsupported factual assertions in Wells Fargo's brief.[15] Self-serving statements of fact in a party's brief, not in proper affidavit form, may not be considered in determining if a genuine issue of material fact exists. *Soles,* 746 F.Supp. at 110 (citing *Sims v. Mack Truck Corp.,* 488 F.Supp. 592 (E.D.Pa.), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980); *Tunnell v. Wiley,* 514 F.2d 971 (3d Cir.1975)).

On the other hand, the plaintiff responds that she deserved the promotion because she had previous experience with a private guard service and had greater seniority within the company than Mr. Echols. Aff. of Robyn White; White Depo. at 27. She also asserts that she is more qualified than Mr. Echols, because he had never been a full time employee of the company or of any unsworn service and that he was fired by a sheriff's office. Aff. of Robyn White. While neither party indicated the method for evaluating an applicant's qualifications, the evidence shows that Ms. White possessed more seniority than Mr. Echols and that Mr. Echols was fired by a sheriff's department.[16] Aff. of Robyn White. Further, there is nothing in the record revealing that Mr. Echols attained higher evaluations than Ms. White or that Wells Fargo was not satisfied with Ms. White's job productivity. In fact, no procedures for evaluating employees has been presented by Wells Fargo. Accordingly, the court finds that the evidence is sufficient to create a factual issue as to whether Ms. White is at least equally as qualified as those who were offered the position.

As a result of the foregoing analysis, the court finds that Ms. White has established a prima facie case of sex discrimination in the denial of a promotion. Accordingly, the burden now shifts to Wells Fargo to "articulate some legitimate, nondiscriminatory reason" for its decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Here, Wells Fargo's rationale for rejecting the plaintiff is two-fold: First, it asserts that Ms. White had accepted employment elsewhere, and thus the site supervisor's position was given to Mr. Echols. Second, it asserts that Ms. White was not the most qualified. The court finds that these reasons satisfy Wells Fargo's "exceedingly light" burden.[17]

---

15. In its submission of documents supporting summary judgment, Wells Fargo submits the "Application for Security Officer Employment" which states that Mr. Echols attended the Montgomery Police Academy from 1–5–1989 to 2–24–1989, and lists his employment experience. However, the court has already concluded that it will not consider this document for summary judgment purposes as it does not meet the requirements of Rule 56(e) of the *Federal Rules of Civil Procedure. See supra* pp. 1578–79. Further, Ms. Poole's statements regarding the work experience of Mr. Echols will not be considered as the statements were not based on personal knowledge. *See supra* pp. 6–11. Therefore, for summary judgment purposes, the court will conduct its analysis as if no evidence reflecting on Mr. Echols' qualifications has been presented.

16. The court stresses that at this juncture, the court construes the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, the court's function at this point is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

17. The court stresses that "the defendant must merely proffer non-gender based reasons, not prove them." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994).

*Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983).

■■■■■ Once a defendant satisfies its burden of production, "the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the trier of fact proceeds to decide the ultimate issue in the case: whether the plaintiff has proven that the employer intentionally discriminated against [her] because of [her sex]." *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061 (11th Cir.1994) (*citing St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749).[18] Here, the court finds that whether or not Wells Fargo acted with a discriminatory motive is a factual issue more appropriate for decision by the trier of fact at a trial on the merits.[19]

■■■ The court also notes that an inference of discrimination cannot arise from the acts of someone who did not take part in the decision-making process. *Mira v. Monroe County School Bd.,* 687 F.Supp. 1538, 1547 (S.D.Fla.1988). In *Mira,* where an interviewer played no role in denying a candidate promotion, his motives were irrelevant, even assuming that he told a female employee that some workers did not want to work for a female supervisor. *Id.* The court reasoned that there was no causal connection established between his statements and her rejection for the promotion. *Id.* Similarly, here, Ms. White stated in her deposition that she was told Mr. Hicks made the final decision on who was promoted, while alleging Mr.

Patton's acts were discriminatory. Depo. of Robyn White at 31–32. However, no evidence has been presented that Mr. Patton did not take part in the decision-making process, and therefore, the court, in light of Mr. Patton's role as Ms. White's supervisor, will assume that Mr. Patton had at least some role in the process of evaluating Ms. White for the promotion. Hence, in viewing all factual inferences in favor of Ms. White, the court finds that genuine issues of material fact exists as to whether Wells Fargo intentionally discriminated against her by refusing to promote her.

## CONCLUSION

The court concludes that it lacks subject matter jurisdiction concerning Ms. White's sexual harassment claim, because Ms. White failed to exhaust her administrative remedies. On the other hand, the court also concludes that Ms. White has presented evidence sufficient to survive Wells Fargo's motion for summary judgment on Ms. White's disparate treatment claim. While Wells Fargo has asserted reasons for having discharged Ms. White, the ultimate determination of whether the proffered reasons are legitimate or pretextual is an issue for the jury, as the court finds that a genuine issue of material fact exists.

For the foregoing reasons, it is CONSIDERED and ORDERED that defendant's mo-

---

**18.** *St. Mary's* modified slightly the Title VII disparate treatment framework. Previously, a plaintiff could satisfy her Title VII burden of proof "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of belief." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1529 (11th Cir.1992) (plaintiff satisfied burden by showing that employer's reasons were unworthy of credence); *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1554 (11th Cir.1990) (same). In other words, "the falsity of the employer's explanation [was] *alone enough* to compel judgment for the plaintiff." *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2752. In *St. Mary's,* however, the Supreme Court of the United States ruled that if "the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its pre-

sumptions and burdens—is no longer relevant." *Id.* at ——, 113 S.Ct. at 2749. Instead, the only inquiry becomes "whether [the] plaintiff has proven 'that the defendant intentionally discriminated against' [her] because of [her] sex." *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

**19.** Wells Fargo also sets forth that at the time of the alleged incident, it had twelve supervisors, seven of those twelve being female. The court recognizes that it may consider this statistical ratio in its determination. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 339–41, 97 S.Ct. 1843, 1856–58, 52 L.Ed.2d 396 (1977). The court also notes that the usefulness of this type of analysis depends on the surrounding facts and circumstances. *Id.* Therefore, the court finds, considering the evidence as a whole, that the weight given these figures should be left to the trier of fact at a trial on the merits.

tion for summary judgment on plaintiff's sexual harassment claim be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that defendant's motion for summary judgment on plaintiff's disparate treatment claim be and the same is hereby DENIED.