**Augustine PALDANO, Plaintiff,**

v.

**ALTHIN MEDICAL, INC., a Delaware Corporation, Defendant.**

**No. 95-7166-CIV.**

United States District Court,
S.D. Florida.

Dec. 12, 1996.

Harry O. Boreth, Glasser & Boreth, Plantation, FL, Barry G. Roderman, Roderman & Assoc., Boca Raton, FL, for Plaintiff.

Michael William Casey, III, Neil F. McGuinness, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, Miami, FL, for Defendant.

## ORDER

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon the Defendant's Motion for Summary Judgment, filed October 14, 1996.

## BACKGROUND

On December 18, 1995, the Plaintiff, Augustine Paldano ("Paldano") filed the instant action against his employer Althin Medical, Inc. ("Althin Medical"), a manufacturer of kidney dialysis equipment, for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981 and the Florida Civil Rights Act of 1992, § 760.01, Fla.Stat. Specifically, Plaintiff alleges that he was denied promotions by the Defendant, and ultimately terminated because of his race (black) and national origin (Sri Lanka).

In January of 1989, Plaintiff, who had a bachelor's degree in electrical engineering, was hired by Althin Medical, through a temporary employment agency, Western Staff Services. Plaintiff was subsequently hired on a permanent basis on June 26, 1989, as a Lead Operator. On December 5, 1989, Paldano requested to be considered for a Group Leader position. In January of 1990, he was laterally transferred to a Group Leader position in Defendant's Automated Kidney Dialysis Plant, and was given increased responsibility and authority to supervise. As a Group Leader, Paldano was classified as a non-exempt hourly employee and regularly worked 12–hour shifts.

Paldano claims that throughout his tenure at Althin Medical he sought to be promoted to an engineering position, however he was unable to attain such a post because of Althin Medical's alleged discriminatory posting policy. The position of engineer at Althin Medical is a salaried exempt position.[1] Job vacan-

---

1. Paldano alleges that he was qualified for both Engineer I & II positions. Engineer I position is described as fresh out of college with 0–2 years experience and a B.S. degree. Engineer II positions are described as 2–5 years experience and a B.S. degree. *See,* Mas depo. Ex. 4

cies for salaried positions are not posted. Instead, the human resources department sends a memorandum to all managers notifying them that a position is available in case they want to recommend someone. In paragraphs 8–27 of the Amended Complaint, Plaintiff alleges that between June of 1989 and April of 1994, he was denied the opportunity to advance at Althin Medical because he was either turned down for an engineering position or was not given the opportunity to apply for an engineering job because it was not posted. As to the positions that were allegedly not posted, Plaintiff admits he does not know the qualifications of the individuals who obtained the positions and could not state that he failed to obtain these positions because of his race and/or national origin.

In April of 1994, Paldano met the Human Resources Director of Althin Medical, George Mas concerning possible openings of engineering positions. After speaking with the department heads, Mas wrote a memo to the Plaintiff advising him that no biomedical engineering position would be available within the following six months, or until October 1994. Plaintiff alleges that within the following six month period many engineering positions became available. However, the record reflects that the next position did not become available until October 3, 1994, when the Defendant advertised for an International Sales Support Engineer position. Plaintiff verbally notified the department head, that he was interested in the job, however he did not make a written application for this position.

On October 8, 1994, Paldano was scheduled to work a 12–hour shift from 7:30 a.m. to 7:30 p.m. At 11:30 a.m., he filled out his time sheet, indicating that he had worked the entire 12–hour shift. However, it is undisputed that Plaintiff left work approximately three and one half hours prior to the end of his shift. Plaintiff claims that around 4:15 p.m., he became ill and decided to leave work early. He knew that his supervisor Gustavo Cruell, was not at home, so he attempted to contact Mr. Cruell's supervisor, Jose Rabade, but was unable to reach him. Plaintiff allegedly informed three co-workers Aldo Profili, Ted Wilson and Michael Coops that he was leaving early and that he could be contacted at home. Plaintiff claims that because he was sick he forgot to adjust his time sheet to indicate the actual time he worked before he left. Plaintiff was scheduled to take vacation for the next four days, up until October 12, 1994.

Employees at Althin Medical are required to fill out their time sheets at the end of their workday. The Plaintiff was aware that recording the wrong number of hours worked is considered falsification of records which could result in disciplinary action, including suspension or termination of employment.

On October 11, 1994, Paldano received a telephone call at home from Cruell, asking him to report to the Human Resources Department. When Plaintiff arrived he met with Cruell, Jose Rabade, the Automated Kidney Plant Supervisor, and Araceli Harrison, a human resources administrator, to verify whether he had left work early on October 8, 1994 and to inquire about the inaccurate number of hours recorded on his October 8th timesheet. Plaintiff explained that he had left work early because he was sick and that he forgot to change his timesheet before he left. Paldano was told that falsification of timesheets is very serious and that he was suspended without pay pending an investigation.

On October 14, 1994, Jose Rabade and Araceli Harrison met with the Plaintiff and presented him with a memorandum advising him of his immediate termination. The memo stated that based on the October 8th timesheet discrepancy, an investigation revealed a "consistent pattern of misrepresenting the number of hours worked on your timesheet". The memo indicated that security badge records were checked for the last two months and the findings showed that out of the nineteen days he worked, on fifteen of those days he had either arrived late for work, left the site for long periods of time, or left early for the day. (*See*, Def.'s Stmt. of Facts Ex. 7).

Plaintiff alleges that, contrary to company policy, he was not given an opportunity to explain the alleged discrepancies indicated in the termination memorandum. Further, that if given an opportunity he could have accounted for the discrepancies. In addition, Plaintiff produced evidence which indicates

that there were flaws in the investigation leading to his termination. For instance, Plaintiff alleges that on several of the occasions he allegedly falsified timesheet records, he had authorization from his supervisor to leave early because someone at his house was sick, on another occasion he left early to take another employee to the hospital, and he was authorized to bring in Chinese food for his birthday party. Gustavo Cruell, Plaintiff's supervisor, testified that if these incidents were days in which Plaintiff was charged with falsifying timesheet records, it would be a mistake. (Cruell depo. at 72 and 73). Plaintiff further alleges that he had a master key that would allow him to enter or exit the facility without using his security badge. Finally, as a Group Leader he had to use his security badge to open the gate for employees who forgot their badge. (Pl.'s Stmt. of Facts at 12–13).

Subsequent to Plaintiff's termination, he was replaced by an individual of his same race. The record shows that Carlyse Lewis applied for Plaintiff's position on October 18, 1994 and his supervisor recommended him for the position on October 21, 1994.

In its Motion for Summary Judgment, Althin Medical asserts: (1) that most of Plaintiff's Claims for failure to promote are time-barred, (2) Paldano has not established a prima facie case of promotion discrimination or discriminatory termination, and (3) that it has set forth legitimate non-discriminatory reasons for not promoting and ultimately terminating the Plaintiff.

## STANDARD OF REVIEW

As a preliminary matter, a district court may grant summary judgment if the moving party shows that there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Real Estate Financing v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir. 1992). The moving party bears the burden of demonstrating that there exists no genuine dispute as to any material factual issues. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 255–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Moreover, in assessing the motions for summary judgment, the Court must review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motions. *Rollins v. Tech-South, Inc.,* 833 F.2d 1525, 1527–28 (11th Cir.1987).

The non-moving party's burden, however, is not lessened by the movant's initial burden. Accordingly, once the movant has demonstrated that an essential element of the non-moving party's case is lacking, the non-moving party must offer proof sufficient to establish the existence of the essential element or else the district court will be required to grant the movant's motion for summary judgment. *Id.* at 1528; *Real Estate Financing,* 950 F.2d at 1543 *citing Celotex Corp.,* 477 U.S. at 321–23, 106 S.Ct. at 2552.

## DISCUSSION

### I. Failure to Promote Claims are Time Barred

■ The Defendant contends that many of Paldano's claims for failure to promote are untimely because they were not brought before the EEOC within the 300–day limitations period. Paldano concedes that some of the failure to promote claims are untimely, but maintains that the Defendant's alleged discriminatory posting policy resurrects the time-barred claims because it constitutes a continuing violation under Title VII.

The filing of a Title VII cause of action within the time limits prescribed by 42 U.S.C. § 2000e–5(e) is a prerequisite to the maintenance of a Title VII action. *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 657–58 (11th Cir.1993), *cert. denied,* 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994); *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980)[2]. Therefore, a past act of discrimination for which a party did not file a charge with the EEOC within the limitations period is legally equivalent to a discriminatory act that occurred before enactment of Title VII. *Gonzalez,* 610 F.2d at 249. However, the limitations period may be

---

2. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

extended to include past discriminatory acts if the employee establishes that the employer is engaged in a continuing violation of Title VII.

To establish a continuing violation, an employee must show that the employer engaged in the illegal practice within the limitations period. *See, Ross,* 980 F.2d at 659 ("Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a charge of discrimination based on that illegal practice until 180 days after the last occurrence or an instance of that practice") (*quoting Gonzalez,* 610 F.2d at 249); *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 755 (3rd Cir.1995) (to demonstrate a continuing violation, the plaintiff must first prove that at least one discriminatory act occurred within the limitations period). Therefore, if the employer ceases to utilize the alleged discriminatory practice more than 300 days prior to the plaintiff's filing of the EEOC charge or if the employee fails to set forth an instance of the discriminatory act within the limitations period there is no continuing violation. *Ross,* 980 F.2d at 659 n. 17.

In the case at bar, Paldano cannot rely on the continuing violation theory to resurrect his untimely failure to promote claims under Title VII and § 760.01 Fla.Stat. Plaintiff filed his charge of discrimination with the EEOC on May 2, 1995. (Def. Stmt. of Facts Ex. 9). Therefore, Paldano is required to demonstrate at least one instance where he was denied a position because of Althin Medical's promotion policy which occurred after July 6, 1994.[3]

The only position that became vacant during the limitations period was for an International Sales Support Engineer, which opened on or around October 3, 1994. However, this claim does not support the continuing violation theory because the position was advertised and Paldano was aware of the vacancy. Therefore, the Court finds that the continuing violation theory is inapplicable in this case. Furthermore, since most of Paldano's failure to promote claims occurred between February 1989 and April of 1994, well short of the limitations period, the defendant is entitled to summary judgment as to all of Plaintiff's Title VII claims for failure to promote.

Similarly, the alleged violations of the Florida Civil Rights Act are also time-barred. To assert a claim under § 760.10, Plaintiff must first have filed a charge of discrimination with the Florida Commission on Human Rights ("FCHR") within 365 days of the alleged violation. § 760.11(1) Fla.Stat. (1995); *Trumbull v. Health Care and Retirement Corp.,* 756 F.Supp. 532, 535 (M.D.Fla. 1991), aff'd 949 F.2d 1162 (11th Cir.1991); *Williams v. Eckerd Family Youth Alternative,* 903 F.Supp. 1515, 1518 (M.D.Fla.1995). Plaintiff filed his charge with the FCHR on April 6, 1995. Therefore any acts occurring before April 6, 1994 may not be considered. Since Plaintiff's failure to promote claims occurred between February of 1989 and April of 1994, all allegations contained in paragraphs 8–26 are time-barred. As to paragraphs 27 and 28 of the Amended Complaint, Plaintiff is not claiming any discrimination as to these acts. (*See* Def.'s Stmt. of Facts at ¶¶ 20 and 21).

It is undisputed that Florida's four-year statute of limitations for personal injuries, found in § 95.11(3), Florida Statutes, applies to the Plaintiff's § 1981 claims. *See e.g., Baker v. Gulf & Western Industries,* 850 F.2d 1480, 1482 (11th Cir.1988); *Preyer v. Gulf Tank and Fabricating Co.,* 826 F.Supp. 1389, 1399 (N.D.Fla.1993). Accordingly, since the instant Complaint was filed on December 18, 1995 any allegations of discrimination that occurred prior to December 18, 1991 are time-barred. Therefore, the allegations contained in paragraphs 8–15 of Plaintiff's Amended Complaint are time-barred because they occurred between February 1989 and November of 1991.

## II. Promotion Discrimination

Since the Court has found that many of Paldano's claims for failure to promote are time-barred, the Court will consider whether the Plaintiff has stated a prima facie case of discriminatory failure to promote with respect to those positions which became vacant after December 18, 1991, for purposes of his Section 1981 claim. These positions include

---

**3.** July 6, 1994 is approximately 300 days prior to the filing of Paldano's EEOC charge.

(1) a Quality Engineer position which opened in January 1993, (2) an Engineer II position which became available in June of 1993 and (3) a February 1994 Biomedical Engineer II position.

■ Under the familiar framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the initial burden is on the Plaintiff to establish a prima facie case of promotion discrimination. This burden is not an onerous one and may be satisfied by simply showing that (1) plaintiff is a member of a protected minority, (2) he was qualified for and applied for a promotion, (3) that despite his qualifications he was rejected, and (4) that another employee who is not a member of a protected class, with equal or lesser qualifications, was promoted to the position he sought.[4] *Smith v. Horner*, 839 F.2d 1530, 1536 (11th Cir.1988) (*citing Perryman v. Johnson Products Co.*, 698 F.2d 1138 at 1142 n. 7); *See e.g. Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 536 (11th Cir.1992); *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1130–31 (11th Cir. 1984). However, in discriminatory promotion cases, where the employer does not use a notice procedure for posting available promotions an employer has a duty to consider all those who might be interested in a promotion. Otherwise, the lack of a notice procedure could result in vacancy information being available to only one segment of a work force, and would place no check on individual biases. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984); *White v. Wells Fargo Guard Services*, 908 F.Supp. 1570, 1582 (M.D.Ala.1995). In such cases, the Plaintiff need not show that he applied for the unadvertised position. *Carmichael*, 738 F.2d at 1133. However, he must prove that he was qualified for the

unadvertised positions and that the individual who obtained the position was equally or less qualified. *Jones*, 977 F.2d at 533; *White*, 908 F.Supp. at 1583.

■ With respect to each of the remaining vacancies Paldano contends he did not have an opportunity to apply for, he cannot identify the qualifications of any of the persons who obtained the positions. Therefore, Plaintiff cannot state that the individuals who obtained the positions were equally or less qualified than himself. Accordingly, the Plaintiff cannot satisfy the fourth prong of his prima facie case.[5]

### III. Discriminatory Termination

■ In the absence of direct evidence of racial discrimination, a plaintiff may establish a prima facie case of discriminatory termination by showing: (1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he was fired, and (4) that he was replaced by someone outside the protected class. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir.1989); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir.1984). However, a prima facie case is not wholly dependant on satisfaction of the fourth prong. A plaintiff may establish a prima facie case of discriminatory termination based on the first three requirements despite the fact that the employer hired a minority to fill the vacancy left by the plaintiff. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995). In such a situation, courts will consider such factors as the length of time between the plaintiff's discharge and the hiring of his replacement, and whether the replacement by the hired minority occurred after the filing of a plaintiff's EEOC charge.

---

**4.** Discrimination claims asserted under 42 U.S.C. § 1981 and Florida Statute § 760.11 are evaluated under the same framework as that of Title VII. *See Fla. Dept. Community Affairs v. Bryant*, 586 So.2d 1205, 1209 (Fla. 1st DCA 1991); *Brand v. Florida Power Corp.*, 633 So.2d 504, 507 (Fla. 1st DCA 1994); *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir. 1991).

**5.** The Court has considered Plaintiff's statistical information which he contends evidences a ra-

cially stratified workforce caused by Althin Medical's promotion policy. These statistics are entitled to little weight due to the lack of comparative data. *See, Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1574–75 (11th Cir.1996), (noting, in a disparate treatment case, statistical evidence must be 'finely tuned' to compare the employer's relevant workforce with the qualified populations in the relevant labor market); *Smith v. Horner*, 839 F.2d at 1536 n. 8.; *Carmichael*, 738 F.2d at 1131.

■ Under an alternative framework, a plaintiff need not show that he was replaced by a non-minority to prove his prima facie case. Instead, the plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) and he was discharged for conduct that was nearly identical to that engaged in by one outside the protected class who was retained. *Hawkins,* 883 F.2d at 984. Under this framework, if a plaintiff can show that disciplinary rules are applied discriminatorily, then it is unnecessary to show that plaintiff was replaced by a non-minority. *Hawkins,* 883 F.2d at 984.

■ In his Opposition Memorandum to the Motion for Summary Judgment, Plaintiff contends that a similarly situated white employee, presumably Mr. Ramon Abad, was accused of falsification of records and was afforded the opportunity to rebut the charges. Although the events leading to Abad's termination were similar to the Plaintiff's, it is clear that Paldano was not afforded the same opportunity to rebut the charges against him before he was terminated. As to Mr. Abad, when confronted by management with all instances of alleged falsification of records, Abad admitted to inaccurately recording his time. Paldano, on the other hand explained the initial charges of falsification of records, but never had a similar opportunity to explain or rebut the alleged fifteen instances of falsification of timesheet records. Moreover, the termination letter did not specify the dates and times of the alleged discrepancies. Furthermore, given the Chief Operating Officer at Althin Medical, Mr. Van Holt's testimony that the Plaintiff should have been given a chance to rebut each of the alleged discrepancies before termination, the Court is satisfied that Paldano has established his prima facie case.[6]

■ Having concluded that Plaintiff has articulated a prima facie case, the burden shifts to the employer to articulate a legitimate non discriminatory reason for the action taken. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. In this case, the Defendant alleges that Plaintiff was terminated for allegedly falsifying timekeeping records. The Court finds that Althin Medical has satisfied its burden of articulating a legitimate non-discriminatory basis for terminating Mr. Paldano.

■ Once the employer carries its burden, of showing a legitimate non discriminatory reason, the ultimate burden shifts back to the employee to demonstrate by a preponderance of the evidence, sufficient factual proof that the proffered reason for the discharge was more likely than not motivated by discriminatory intent. *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817. Although the defendant has presented a legitimate non-discriminatory reason for terminating Paldano, i.e. alleged falsification of records, given the alleged flaws in this investigation, factual questions remain as to whether the Defendant's stated reason for terminating Paldano was a pretext for unlawful discrimination. Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is Granted in part. The motion is Granted as to Plaintiff's failure to promote claims, however the motion is Denied as to Plaintiff's Claims for discriminatory termination. It is further,

**ORDERED AND ADJUDGED** that the Plaintiff's Motion to Strike Defendant's Replies to Plaintiff's Opposition Memorandum to Defendant's Motion for Summary Judgment and Partial Summary Judgment is DENIED.

---

6. The Plaintiff cannot set forth a prima facie case of discriminatory termination under the first framework. Although it is undisputed that Plaintiff is a member of a protected class and that he was qualified for his former position, and that he was discharged. The record is clear that Mr. Lewis applied for Plaintiff's vacant position and was recommended for the position within one week of Plaintiff's termination. Further, as in *Edwards* the Plaintiff does not allege that the hiring of Mr. Lewis was pretextual.