**Sherania JONES, Plaintiff,**

v.

**WINN–DIXIE STORES, INC., a Florida for profit Corporation, Defendant.**

No. 98–0287–CIV.

United States District Court, S.D. Florida.

June 30, 1999.

Kelsay D. Patterson, Michael M. Tobin, P.A., Coral Gables, FL, for Plaintiff.

Spencer H. Silverglate, Spencer T. Kuvin, Clarke, Silverglate, Williams & Montgomery, Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MORENO, District Judge.

The Plaintiff claims that Winn–Dixie discriminated against him due to his race by transferring him to a different store, creating a hostile work environment, and con-structively discharging him in violation of Title VII and 42 U.S.C. § 1981. The Court finds that the Plaintiff fails to make a *prima facie* case of race discrimination as he cannot show that other similarly situated non-black employees were treated more favorably. In addition, the Court finds no evidence that the employer's reason for transferring the Plaintiff—his repeated insubordination—was a pretext. Furthermore, because the Plaintiff has failed to show that his workplace was permeated with discriminatory behavior that was sufficiently severe or pervasive to create a hostile working environment, the Plaintiff's hostile work environment and constructive discharge claims fail as well.

### BACKGROUND

The Plaintiff, Sherania "David" Jones, who is African American, began working for the Defendant, Winn–Dixie, as a part-time stock clerk on August 10, 1989. By December of 1996, after several promotions, the Plaintiff became the assistant meat market manager at Winn–Dixie Store 371. Roderick Bellinger, also African American, was the Plaintiff's direct supervisor.

During his employment with Winn–Dixie, the Plaintiff was involved in several incidents of insubordination or unacceptable conduct. Plaintiff admits that in 1989, while at work and despite the assistant manager's instructions not to go outside, the Plaintiff left the store and was involved in a physical altercation outside the Winn–Dixie store. Another time, the Plaintiff was verbally reprimanded by a superior, Mr. D'Vincent, for arguing with a man who had come into Store 371 to repossess a co-worker's car.

In 1996, Ms. Molina, a female deli clerk at Store 371 filed an internal complaint against the Plaintiff for harassment. Ms. Molina claimed that the Plaintiff made in-appropriate comments to her and touched

her. When Rene Coté, the district manager, spoke to Plaintiff about Ms. Molina's complaint, Mr. Coté told the Plaintiff he could either be transferred to another store or speak to security about the incident. Plaintiff admits he became upset and raised his voice, and that Mr. Coté told him that "with an attitude like that, maybe you need to be transferred." Ultimately the Plaintiff chose to speak with a security officer. The internal investigation determined that the Plaintiff's conduct was inappropriate and he was counseled about his behavior and given a written reprimand.

Approximately seven months later and also while at Store 371, the Plaintiff engaged in a fight with a Pepsi vendor in the back of the store. After the struggle, the Plaintiff's supervisor, Mr. D'Vincent, told the Plaintiff to go home. Plaintiff admits that he got upset when Mr. D'Vincent told him to go home, refused to go home, and threw some pans into the sink. The Plaintiff admits that he argued with Mr. D'Vincent and that because Mr. D'Vincent was the second person in charge of the store, the Plaintiff should have followed his instructions.

In a separate incident, on December 13, 1997, an employee in the meat department, Enrique Santos, complained to the store manager, Pedro Leon, of the Plaintiff's conduct. Apparently, the Plaintiff told Santos that his meat display "looked like shit." A verbal altercation ensued between the two men. Leon met with Santos, Bellinger, Jorge Fiallo, the assistant store manager, and the Plaintiff about this incident. The Plaintiff became upset because he was not given the opportunity to tell his side of the story, began yelling, and then went back to the meat department. A few minutes later, Mr. Leon told the Plaintiff that Mr. Coté said the Plaintiff was to go home. The Plaintiff admits that he began arguing with the store manager and demanded to speak to Mr. Coté. Mr.

Coté called the Plaintiff and told him he needed to go home. Plaintiff asked Mr. Coté why he had to go home and told him, "I'm not going home." Mr. Coté told the Plaintiff he was being insubordinate. The Plaintiff admits he continued arguing with Mr. Coté. Finally, Mr. Coté told the Plaintiff he was going to transfer him from Store 371 and that the Plaintiff would not work at Store 371 again.

Although Mr. Coté instructed the Plaintiff not to go back to Store 371 and explained that he would call Plaintiff to tell him where he was being transferred, the Plaintiff went back to Store 371 the next day for his 6 a.m. shift. Mr. Coté and Mr. Fiallo asked the Plaintiff why he had come into work when he had been told not to return. A verbal dispute ensued, and the Plaintiff admits that he "got in Mr. Fiallo's face."

Mr. Coté transferred the Plaintiff to the meat department of Store 385. Plaintiff earned the same wage and kept the same title. However, according to the Plaintiff, he had fewer responsibilities, was not given a set work schedule, and the store had a smaller sales volume than Store 371. Because Bill Harvey, the African American meat market manager at Store 385, was unable to give the Plaintiff a set work schedule, the Plaintiff told Mr. Harvey to call Mr. Coté and tell him the Plaintiff was taking some vacation time. Mr. Harvey called Mr. Coté to discuss Plaintiff's insubordination and told Coté he did not want the Plaintiff working in his meat department.

Subsequently, Coté allowed Plaintiff to take some vacation time and made arrangements for Plaintiff to transfer to Store 302. The Plaintiff earned the same wage and kept his title while at Store 302. Soon after starting at Store 302, the Plaintiff called in sick and never returned to work. One month later, on February 12, 1998, the Plaintiff filed his claim against

Winn–Dixie for racial harassment. On February 28, 1998, the Plaintiff delivered a letter to Winn–Dixie stating that he was taking a one year leave of absence due to employment related stress.

## LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## LEGAL ANALYSIS

### A. Disparate Treatment

■ The Plaintiff argues that he was treated differently because of his race in the terms and conditions of his employment, in violation of Title VII and 42 U.S.C. § 1981[1]. Race discrimination may be proven through one of three generally accepted methods: by direct evidence of discriminatory intent, by circumstantial evidence using the framework set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or through statistical proof. *See Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998).

### 1. Direct Evidence of Discrimination

■ The Eleventh Circuit has defined direct evidence as "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* Remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination. *Id.* (citing *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir.1990)).

■ The Plaintiff points to two comments made by Winn–Dixie employees as direct evidence of race discrimination. According to Jorge Montalvo, a meat wrapper, the assistant store manager, Jorge Fiallo, told him that he was going to get the Plaintiff's "black ass out of the store" because he was a trouble-maker. According to Rebecca Lacsina, a former Winn–Dixie bookkeeper, Pedro Leon, the store manager, told her that he felt there were too many blacks working at the store.

The comments offered by the Plaintiff do not constitute direct evidence of discrimination. First, neither Fiallo nor Leon had the authority to transfer the Plaintiff, and thus they cannot be considered decisionmakers. Second, neither of these alleged statements was made in the decisionmaking process. Third, both statements require an inference before it can be said that the speaker had discriminatory intent.

### 2. Circumstantial Evidence of Discrimination

Since the Plaintiff's allegations include neither direct evidence of discrimination

---

**1.** Section 1981 claims are reviewed under the same standards as Title VII claims. *See Reyn-* *olds v. CSX Transp. Inc.*, 115 F.3d 860 (11th Cir.1997).

nor statistical proof of a pattern of discrimination, his case is a circumstantial evidence case. Both parties agree that this is a disparate treatment case and should be analyzed under the *McDonnell Douglas* framework.

■ Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Combs v. Meadowcraft, Inc.,* 106 F.3d 1519, 1527–28 (11th Cir. 1997). Once the plaintiff establishes his *prima facie* case, a presumption is created that the employer unlawfully discriminated against the employee. *Id.* at 1528. However, "the fact that a plaintiff has established a *prima facie* case does not in and of itself foreclose the possibility of summary judgment being granted in favor of the employer." *Young,* 840 F.2d at 828.

■ The effect of the presumption of discrimination is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action. *Combs,* 106 F.3d at 1528. As the Eleventh Circuit explained in *Combs,* "[t]o satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it was actually motivated by the proffered reasons.'" *Id.* at 1528 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ If the defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the plaintiff's *prima facie* case is eliminated, and the plaintiff has the opportunity to show that the defendant's proffered explanations for its decision were not the real reasons. *Id.* A plaintiff may do this either directly by persuading the court that the discriminato-ry reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence. *Id.; see also Bogle v. Orange County Bd. of County,* 162 F.3d 653, 658 (11th Cir.1998).

■ A plaintiff establishes a *prima facie* case of race discrimination under Title VII by showing that 1) he belongs to a racial minority; 2) he was subjected to an adverse job action; 3) his employer treated similarly situated employees outside his classification more favorably; and 4) he was qualified to do the job. *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817).

The Defendant argues that the Plaintiff fails to set forth a *prima facie* case of discrimination because he was not subjected to an adverse job action. The Defendant argues that Plaintiff's transfer from Store 371 to Stores 385 and 302 was not an adverse employment action because the Plaintiff received no reduction in salary, benefits, duties, or prestige, and he retained his job title. The Plaintiff testified in his deposition that after his transfer, he had no authority and no longer had the same responsibilities because both stores already had assistant meat market managers. In addition, the Plaintiff argues that the transfer was equivalent to a demotion because he was transferred to stores with lower sales volumes and no longer had a set work schedule.

Because the Court's decision granting summary judgment rests on other grounds, the Court need not decide the issue of whether the Plaintiff suffered an adverse employment action due to his transfer from Store 371. The Court assumes that the Defendant suffered an adverse employment action as his transfer resulted in a loss of managerial responsibilities. *See Doe v. Dekalb County School District,* 145 F.3d 1441, 1452 (11th Cir.

1998) (explaining that transfers that result in lesser pay, responsibilities, or prestige are considered adverse).

The Defendant also attacks the Plaintiff's *prima facie* case on the grounds that the Plaintiff has not produced any evidence that similarly situated employees of a different race were treated more favorably. Although neither party raised this argument, the Court notes that where a plaintiff alleges discriminatory application of discipline for violation of work rules, the *prima facie* case differs somewhat from the *prima facie* model set out in *McDonnell Douglas*. In discriminatory discipline cases, the Plaintiff must prove that he is a member of a protected class and either a) that he did not violate the work rule, or b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar conduct. *See Jones v. Gerwens*, 874 F.2d 1534, 1539–40 (11th Cir.1989). The most important variables in the disciplinary context, and the most likely sources of different, but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed. *See Jones*, 874 F.2d at 1539–40 (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir.), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985)).

In this case, the Plaintiff does not dispute that he has violated work rules prohibiting insubordination, disorderly conduct, or disturbance or harassment of any associate or customer.[2] This type of conduct is listed in Winn–Dixie's *You and Your Job* Handbook as "unacceptable conduct." Rather, the Plaintiff argues that Winn–Dixie discriminated against him based on his race by transferring him to another store while treating Hispanic employees, who also violated work rules, more favorably.

A claim of discriminatory discipline requires a showing that the misconduct for which the plaintiff was disciplined was "nearly identical" to that engaged in by an employee outside the protected class and whom was not disciplined. *See Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1185 (11th Cir.1984). The Plaintiff fails to satisfy this requirement because the examples he offers to show that other non-black employees were treated more favorably despite having violated workplace rules are isolated incidents of misconduct, and dissimilar from the Plaintiff's pattern of insubordination toward superiors.

For example, the Plaintiff argues that Rolando Veiga, a Hispanic employee who was accused of pulling out a gun and threatening a customer, was only sent home without any investigation. However, as the Defendant points out, Plaintiff's Exhibit 7 shows that the store manager confronted Mr. Veiga, searched his car, where no gun was found, and told Mr. Veiga that if he ever had a gun on Winn–Dixie premises or in his car, he would be dismissed.

Next, the Plaintiff accuses assistant store manager Jorge Fiallo of engaging in an inappropriate sexual relationship with a younger female employee. However, the Plaintiff presents no evidence that a complaint was ever filed by this female employee or that management was aware of any alleged inappropriate relationship. This example is dissimilar from Ms. Molina's compliant of harassment against the Plaintiff.

---

2. Even if the Plaintiff were to dispute that he violated workplace rules, the Court need not determine the validity of such a claim because the employer has offered a legitimate, nondiscriminatory reason for disciplining the Plain-

tiff. *See Jones*, 874 F.2d at 1540 (explaining that an employer successfully rebuts any *prima facie* case of disparate treatment by showing that it honestly believed the employee committed the violation).

As for insubordination by other employees, the Plaintiff argues that Enrique Santos, a meat market employee, was not disciplined for being insubordinate to the Plaintiff when the Plaintiff told him his meat case "looked like shit." According to the Plaintiff, Santos cursed back at the Plaintiff and told Plaintiff to do it "his damn self" next time. The Defendant points out that Santos's alleged insubordination was one single incident of insubordination as opposed to the Plaintiff's history of insubordination. Moreover, the Defendant argues that the Plaintiff was an assistant meat market manager, and as such he was held to a higher standard of professionalism because he was expected to set an example for other meat market employees, like Santos. *See Nix*, 738 F.2d at 1186 (explaining that if an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown).

As further evidence of discriminatory discipline, the Plaintiff points to an occasion when Jorge Montalvo, a meat cutter, refused to cut some meat despite Plaintiff's order to do so. The Plaintiff told Montalvo to go home. On his way out of the store, Montalvo spoke to Leon, the store manager, and Bellinger, the meat department manager. Montalvo apologized for not following Plaintiff's orders and was told to go back to work. Montalvo then did the work the Plaintiff had asked him to do. Montalvo received no further discipline. The Defendant argues that this incident is much different from Plaintiff's insubordination in that Montalvo did not argue with the store managers, but instead apologized and followed their instructions.

Plaintiff states that on another occasion, Montalvo marked down the price of steaks for another employee, Luis Betancourt, although Montalvo did not have the authority to mark down prices. Neither Montalvo nor Betancourt were terminated, suspended, or transferred.

The Defendant argues that the Plaintiff does not provide evidence of individuals of a different race who were treated dissimilarly in "nearly identical" situations. *Nix*, 738 F.2d at 1185. According to the Defendant, the Plaintiff has failed to present even a single employee who had a similar history of improper behavior as the Plaintiff and who was treated more favorably. The evidence reflects that the Plaintiff was not transferred from Store 371 after a single incident, but rather after a series of incidents of insubordination toward his superiors, culminating in the Plaintiff's insubordination toward the district manager. Because the nature of the offenses committed by the Plaintiff is not similar to the nature of the discrete offenses committed by other Winn–Dixie employees, the Defendant's treatment of the Plaintiff in transferring the Plaintiff to another store, while different, cannot be said to be discriminatory. *See Moore*, 754 F.2d at 1105. Because the Plaintiff has failed to show that he engaged in misconduct similar to that of a person outside his classification, and that the disciplinary measures enforced against him were more severe than those enforced against the others who engaged in similar conduct, the Plaintiff has not set forth a *prima facie* case of disparate treatment. *See Jones*, 874 F.2d at 1539–40.

Even if the Court were to find that the Plaintiff has made out a *prima facie* case of race discrimination, the Defendant provides a legitimate, nondiscriminatory reason for transferring the Plaintiff from Store 371—his repeated insubordination. *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 964 (11th Cir.1997). The Plaintiff admits that he argued with his superiors, raised his voice at superiors, refused to go home despite orders to so from management, and threw pans into the sink in anger in front of a supervisor.

Although the Plaintiff may dispute his culpability in several of the incidents, un-

der Title VII, the focus is on the employer's perception of the Plaintiff. *See Chaney v. Southern Railway Co.*, 847 F.2d 718 (11th Cir.1988). Whether or not the employer turns out to be right about the employee's conduct is not relevant, as long as the discipline was not based on discriminatory animus. *See Nix*, 738 F.2d at 1187 ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for discriminatory reasons."). More importantly, the Plaintiff admits that he reacted to a number of those situations by losing his temper and becoming insubordinate toward his superiors. It was this repeated insubordination which caused Winn–Dixie to transfer the Plaintiff to another store.

Although the Plaintiff does not address whether the Defendant's legitimate, nondiscriminatory reason for transferring him to a different Winn–Dixie store was a pretext for race discrimination, the Court must address the ultimate question of whether Winn–Dixie intentionally discriminated against the Plaintiff based on his race. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 985 (11th Cir.1989). In order to attack Winn–Dixie's legitimate, nondiscriminatory reasons, the Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs*, 106 F.3d at 1538.

The statement by Fiallo regarding his desire to get the Plaintiff's "black ass" out of the store because he was a trouble-maker and Leon's alleged statement to a bookkeeper that there were too many blacks working at the store are not sufficient evidence to discredit the Defendant's legitimate, nondiscriminatory reason for transferring the Plaintiff. Neither Fiallo

nor Leon transferred or had the authority to transfer the Plaintiff to another store. It was Rene Coté, the district manager, who made the decision to transfer the Plaintiff after the Plaintiff ignored the store manager's order to go home, demanded to speak to the district manager, and then refused to go home even after Mr. Coté instructed him to do so.

The Plaintiff also challenges the Defendant's legitimate, nondiscriminatory reason for disciplining the Plaintiff by pointing to other non-black employees who also violated workplace rules, but were not transferred from Store 371. However, as discussed above, the Plaintiff fails to show pretext because he cannot point to any other employee with a similar pattern of insubordination who was treated more favorably than the Plaintiff. Therefore, the fact that Winn–Dixie did not transfer other employees for their isolated incidents of misconduct does not discredit the Defendant's legitimate, nondiscriminatory reason for transferring the Plaintiff to another Winn–Dixie store. As such, the Plaintiff's disparate treatment claim fails as a matter of law.

## B. Hostile Work Environment

Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatory hostile or abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). This standard requires an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive. *Id.* at 21–22, 114 S.Ct. 367.

Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discrimi-

natory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 23, 114 S.Ct. 367; *see also Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995).

■] The Plaintiff fails to present a legal argument in response to the Defendant's motion for summary judgment as to the hostile environment claim. However, the Plaintiff claims that a genuine issue of material fact exists as to "the environment geared towards ultimately forcing a transfer and a demotion." Even assuming all the facts presented by the Plaintiff are true, his hostile work environment claim fails because he does not offer any evidence that his workplace was "permeated with discriminatory behavior."

The only evidence the Plaintiff has presented to support his claim of a racially hostile work environment is: 1) one complaint to the 1–800 Action Line in 1996 regarding the behavior of the store manager at Store 371 toward the black employees; 2) a comment in Spanish by assistant store manager Jorge Fiallo to Jorge Montalvo, a meat wrapper, that he was going to get the Plaintiff's "black ass out of the store" because he was a trouble-maker; and 3) affidavit testimony by Rebecca Lacsina, a former bookkeeper of Winn–Dixie Store 371, that store manager Pedro Leon told her once that he felt too many blacks were working at the store. This evidence can hardly be considered so severe or pervasive to create a discriminatory hostile or abusive working environment, especially considering that the Plaintiff was not privy to any of these alleged comments.

The Plaintiff's own testimony belies his argument that he found the work environment at Store 371 hostile due to his race. The Plaintiff admits, "I enjoyed working at Winn–Dixie. I enjoyed working with the people I worked with. I don't have a problem with working with anyone I've ever worked with." Plaintiff also admitted that working with his direct supervisor Roderick Bellinger at Winn–Dixie Stores 266 and 371 was one of the best experiences of his life and that their working relationship was "exceptional." Moreover, the Plaintiff acknowledges that he was never subjected to any racial slurs by management.

## C. Constructive Discharge

■] Constructive discharge in violation Title VII occurs when an employee is compelled to resign because the employer is deliberately subjecting him to exceedingly intolerable and illegal working conditions which are a direct result of the employee's race, color, religion, sex, or national origin. *See Doe v. Dekalb County School District,* 145 F.3d 1441, 1450 (11th Cir.1998); *Henson v. City of Dundee,* 682 F.2d 897, 907 (11th Cir.1982); *Young v. Southwestern Sav. and Loan Assoc.,* 509 F.2d 140, 144 (5th Cir.1975). To prove constructive discharge an employee must demonstrate that his working environment was so intolerable that a reasonable person in his position would be compelled to resign. *See Kilgore v. Thompson & Brock Mgmt., Inc.,* 93 F.3d 752, 754 (11th Cir. 1996).

■ The Plaintiff argues that he was forced to take a one-year leave of absence from his job with Winn–Dixie because "a black cloud was following him around destroying his name and reputation since the fraudulent sexual harassment allegation." However, the evidence presented by the Plaintiff to support his argument that Winn–Dixie was slandering his name shows at most that the Plaintiff's new co-workers had heard he had an attitude problem. Even if his new co-workers had heard that he was "a black racist who hated Hispanics," as the Plaintiff claims, the Plaintiff has provided no evidence to show that Winn–Dixie was responsible for creating this perception of the Plaintiff by

other employees. Moreover, the Plaintiff has failed to allege and demonstrate that any attempts by Winn–Dixie to force the Plaintiff to resign were based on his race.

To the extent that the Plaintiff argues that he was forced to leave due to a hostile work environment, this argument must fail as the Court has rejected the Plaintiff's hostile work environment claim. There is insufficient evidence from which a reasonable jury could find that the Defendant constructively discharged the Plaintiff due to his race.

### CONCLUSION

For the foregoing reasons, it is

ADJUDGED that the Defendant's Motion for Summary Judgment (**D.E. No. 88**) is GRANTED. It appears from a careful review of the motions, filings and attachments that no genuine issues of material fact remain in dispute. Hence, the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).