Oliver **HANLEY**, et al., Plaintiffs,

v.

**THE SPORTS AUTHORITY,**
et al., Defendants.

No. 98–6531SEITZ/GARBER.

United States District Court,
S.D. Florida,
Miami Division.

Aug. 18, 2000.

---

**1356**

Ann B. Bradshaw, Hollywood, FL, Saul Smolar, Ft. Lauderdale, FL, for plaintiffs.

Michael William Casey, III, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, Miami, FL, for defendants.

### OMNIBUS ORDER

SEITZ, District Judge.

THIS MATTER is before the Court on numerous pending motions: Defendants' Motion for Summary Judgment as to Count VIII (Linda Jones) [DE–51], Defendants' Motion for Summary Judgment as to Counts VI and VII (Anthony Malone) [DE–91], Defendants' Motion for Summary Judgment as to Count V (Richard Hudson) [DE–95], Defendants' Motion for Summary Judgment as to Counts IX, X, and XI (Keisha Fearon) [DE–116], Defendants' Motion for Summary Judgment as to Count I (Oliver Hanley) [DE–123] and Defendants' Motion for Summary Judgment as to Counts XII and XIII (Wendy Turner) [DE–135].[1]

### I. BACKGROUND AND PROCEDURAL FACTS

This case is being brought by six individual Plaintiffs against their employer or former employer, The Sports Authority, and certain individual Defendants for discrimination under 42 U.S.C. § 1981 on the basis of their race (black). The Sports Authority is a sporting goods retailer with numerous stores in South Florida. Plaintiffs allege a myriad of complaints against the Sports Authority ranging from a failure to train and failure to promote to racial harassment and disparate treatment on the basis of their race. The Court has reviewed these Motions and for the reasons set forth in detail below finds that all of the above-mentioned Motions should be granted except those as to Plaintiffs Hudson, Malone and Hanley.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case, and it is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court has viewed the evidence and all factual inferences therefrom in the

---

1. The claims brought by Plaintiff Oliver Taylor have been dismissed with prejudice pursuant to the stipulation of the parties. In addition, the parties have stipulated that Linda Jones's failure to promote claim should also be dismissed with prejudice.

light most favorable to Plaintiffs. *Id.* Plaintiffs, however, bear the burden of coming forward with evidence on each essential element of their claims such that a reasonable jury could find in their favor. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990).

## III. *ANALYSIS*

### A. *Legal Principles* [2]

#### 1. **Disparate treatment claims** [3]

■ In order to establish a prima facie case of disparate treatment based upon race, Plaintiffs must establish:

1. That they are members of a protected class;

2. That they were entitled to or qualified for their positions;

3. That Plaintiffs suffered an adverse employment action; and

4. That Plaintiffs were treated less favorably than similarly situated employees who were not members of the protected class.

*Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). Each Plaintiff is African-American and thus meets the first prong of the test. The second prong relates to each individual's qualifications and will be discussed with respect to each Plaintiff as necessary. The third and fourth prongs will be discussed in more detail below.

Assuming that a plaintiff can establish a *prima facie* case, the Court must look to see if the employer has articulated a legitimate, non-discriminatory reason for the adverse action. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Defendant's burden at this stage is only one of production and not persuasion. Once Defendant has proffered a legitimate reason for its adverse employment action, the presumption against Defendant is rebutted, and Plaintiff must come forward with *evidence* that the reason is pretextual and that Defendant intentionally discriminated against Plaintiff because of his race. *Id.* at 507, 113 S.Ct. 2742. Plaintiffs may accomplish this "either directly by persuading the court that a discriminatory motive more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

#### 2. **Adverse Employment Actions**

■ The third prong of the disparate treatment analysis relates to adverse employment actions. Plaintiffs allege a variety of wrongs committed by Defendants including unfair discipline, failure to train, discriminatory assignment of duties and a multitude of other alleged wrongs. The Eleventh Circuit has joined the majority of circuits in holding that an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire, or constructive discharge in order to qualify as an adverse employment action. *See Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998). Although adverse employment actions may include reprimands, refusals to hire and refusals to promote, the action in question must have more than a tangential effect on the ultimate employment decision. *Mattern v. Eastman Kodak,* 104 F.3d 702, 708 (5th Cir.1997); *see also McCabe v. Shar-*

---

**2.** Because Plaintiffs allege similar factual scenarios that raise the same issues of law, the Court will first set out the applicable law and then address each Plaintiff's claims separately.

**3.** Discrimination claims asserted under 42 U.S.C. § 1981 are evaluated using the same framework as that used in Title VII cases. *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 949 (11th Cir.1991); *Florida Dep't of Community Affairs v. Bryant,* 586 So.2d 1205, 1209 (Fla. 1st DCA 1991).

*rett*, 12 F.3d 1558, 1563 (11th Cir.1994). Indeed, the conduct in question must rise to a substantial level before it can be cognizable as unlawful discrimination. *Wideman*, 141 F.3d at 1456. Most recently, the Eleventh Circuit has defined an adverse employment action as "an ultimate decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir.2000) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997)). Whether a particular decision is actionable must be determined on a case-by-case basis. *Id.* Moreover, the Court held that when an employer proposes an action and then corrects it before it has any effect it is not an adverse action. *Id.* In addition, the Eleventh Circuit has specifically stated that it is not establishing a general civility code in the workplace. *Id.*

■ In determining whether an employer's actions constitute adverse employment decisions, the Court must take an objective approach. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1447–49 (11th Cir. 1998). The question the Court must answer is whether a reasonable person in Plaintiff's position would have viewed the decision as adverse. *Id.* at 1449. A decision is not adverse just because an employee does not like it. *Id.* (citing *Perryman v. West*, 949 F.Supp. 815, 819 (M.D.Ala. 1996)). Moreover, not every unkind act amounts to actionable discrimination. *Id.* (citing *Wu v. Thomas*, 996 F.2d 271, 273 n. 3 (11th Cir.1993)); *see also Dudley v. Metro–Dade County*, 989 F.Supp. 1192, 1204 (S.D.Fla.1997) (hostility or refusal to accept paperwork is not an adverse employment decision). For example, courts have held that verbal reprimands and threats of termination do not rise to the level of adverse actions. *Mistretta v. Volusia County Department of Corrections*, 61

F.Supp.2d 1255, 1260 (M.D.Fla.1999). Moreover, the adversity must be material, and not a *de minimis* inconvenience. *Doe*, 145 F.3d at 1453.

### 3. Similarly Situated Comparators

■ In order to prevail on their § 1981 claims. Plaintiffs must show that similarly situated non-black employees were treated more favorably than they were. *Coutu v. Martin County Bd. Of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir.1995). A claim of disciplinary discrimination, for example, requires a showing that the misconduct in question was "nearly identical" to that engaged in by an employee outside the protected class, who was not disciplined. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984); *Jones v. Winn–Dixie Stores, Inc.*, 75 F.Supp.2d 1357, 1364–65 (S.D.Fla.) (granting summary judgment where plaintiff alleged certain similar incidents but failed to identify any comparator with same record of insubordination), *aff'd* 203 F.3d 842 (11th Cir.1999). Plaintiffs must show that they are similarly situated to non-black persons in every respect, including that there was the same decision-maker was involved and that the alleged comparators committed offenses of the same nature. *See Holifield*, 115 F.3d at 1562. Comparators need not be exactly the same, but Plaintiffs must offer some evidence of a non-black employee who has "nearly the identical quantity and quality" of misconduct. *See Maniccia v. Brown*, 171 F.3d 1364, 1368–69 (11th Cir.1999) (citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989)("[e]xact correlation is neither likely nor necessary, but the cases must be fair congeners")).

### 4. Racial Harassment Claims

■ Hostile work environment harassment occurs when the conduct in question "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment."

See Meritor Sav. Bank v. Vinson, *477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).* In order to establish a hostile work environment racial harassment claim under section 1981, Plaintiffs must establish that: (1) they belonged to the protected group at issue; (2) they were subjected to unwelcome racial harassment; (3) the harassment was based upon race; (4) the harassment affected the conditions of their employment; and (5) the defendant acted with discriminatory purpose or intent.[4] See, e.g., Watkins v. Bowden, *105 F.3d 1344, 1355 (11th Cir.1997).* As to the fourth element, a plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive working environment. See Harris v. Forklift Sys., Inc., *510 U.S. 17, 20–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).* Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond the purview of § 1981. Id. at 21–22, 114 S.Ct. 367. Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." Faragher v. City of Boca Raton, *524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).*

### 5. Failure to Promote

■ In order to prevail on their failure to promote claims, plaintiffs must establish a *prima facie* case consisting of four elements: (1) they are members of a protected class; (2) they were qualified for and applied for the position; (3) they were rejected despite their qualifications; and (4) after rejection, their employer continued to seek other applicants or filled the position with a person outside of the pro-

tected class with equal or lesser qualifications. *See Walker v. Mortham,* 158 F.3d 1177, 1192 (11th Cir.1998), cert. denied, 528 U.S. 809, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999); *see also Paldano v. Althin Med., Inc.,* 974 F.Supp. 1441, 1446 (S.D.Fla. 1996). Moreover, if the employer does not post the positions, a plaintiff need not show that she applied for the positions. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1130–31 (11th Cir.1984); *see Paldano,* 974 F.Supp. at 1446. Additionally, if an employer fails to use some sort of notice procedure, then it has a duty to consider everyone who might be interested in the position. *Id.*

### 6. Constructive Discharge

■ Under the doctrine of constructive discharge, "[t]he general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer ... is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Doe v. Dekalb County Sch. Dist.,* 145 F.3d 1441, 1450 (11th Cir.1998). To prove constructive discharge, Plaintiff must demonstrate that the working conditions at the Sports Authority were so intolerable that a reasonable person in her position would have been compelled to resign. *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *see also Schwertfager v. City of Boynton Beach,* 42 F.Supp.2d 1347, 1367 (S.D.Fla.1999). In assessing constructive discharge claims, the Court does not consider a plaintiff's subjective feelings about her employer's actions, but rather relies on a reasonable person's standard. In addition, the Eleventh Circuit has determined that unless an employer is given sufficient time to remedy the situation, a constructive discharge will general-

---

**4.** "Where Section 1981 is used as a parallel remedy for race discrimination which violates the equal protection clause of the Fourteenth Amendment, the elements of such a claim are the same as the elements of a Title VII ac-

tion." *See McKenzie v. EAP Management Corp.,* 40 F.Supp.2d 1369, 1374, n. 1 (S.D.Fla.1999)(citing *Turnes v. AmSouth, Bank N.A.,* 36 F.3d 1057, 1060 (11th Cir. 1994)).

ly not be found to have occurred. *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996).

### 7. Discipline Claims

 To establish a *prima facie* case in the area of disparate discipline, a plaintiff must demonstrate:

(1) that he belongs to a protected class; (2) that he is qualified for the job; and (3) that a similarly situated employee engaged in the same or similar conduct and did not receive similar discipline. *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir.2000) (upholding jury verdict finding discrimination where evidence suggested that plaintiff was treated more harshly than black employee who committed same offense). Once a plaintiff makes this showing the burden shifts to the employer to provide a specific non-discriminatory reason for disciplining the employees in question differently. *Id.*

### B. *Plaintiffs' Claims*

#### 1. Richard Hudson

 In essence, Plaintiff Hudson's claims are that Sports Authority contrived false and negative counseling reports, that he did not receive proper training, that he was wrongfully demoted, that Sports Authority failed to promote him, and that he was generally treated differently than his white counterparts. Hudson began working at Sports Authority in September 1996 as Team Lead in Receiving. Subsequently, Sports Authority transferred Hudson to a position as Team Lead in the Tennis and Golf Departments. Defendant alleges that due to poor performance, Hudson was demoted to a sales associate in the Bikes and Fitness Department. While working as a sales associate, Hudson claims that three different managers told him that he would be promoted to an available position as a Team Lead in the Apparel Department, and Plaintiff contends that he did not get the position because of his race. Plaintiff

argues that that position has been filled by two non-African-Americans since he was demoted.

#### a. Lack of Training

In support of his lack of training allegation, Plaintiff argues that non-black employees were given more training.[5] Plaintiff contends that Luis Ruiz is the appropriate non-black comparator and that the two employees did not receive the same training. It is undisputed, however, that Mr. Ruiz was in a different position than Plaintiff and thus, is not an appropriate comparator. *See Holifield*, 115 F.3d at 1562. Mr. Ruiz was a Merchandise Manager whereas Plaintiff was being trained as a Team Lead. Because Plaintiff has failed to offer any evidence of an appropriate comparator receiving different training than that provided to him, his § 1981 claim, to the extent it relies on inadequate training is dismissed. *See Jones v. Winn–Dixie Stores, Inc.*, 75 F.Supp.2d 1357, 1364–65 (S.D.Fla.1999).

#### b. Assistance in Completing Work

Plaintiff claims that he did not receive the same assistance in completing his work as another Team Lead, Marcelo Luna, did which resulted in Plaintiff's being counseled about not completing his assignments. In rebuttal, Defendants argue that Luna was counseled a year later under a different set of circumstances for not completing his work. Given that it is Defendants' burden to demonstrate no genuine issue of material fact and Plaintiff has identified a potential comparator, the Court cannot grant summary judgment with respect to this claim. In addition, there is a genuine issue of material fact regarding whether this was an adverse employment action given that Plaintiff was demoted from his Team Lead position.

---

**5.** As will be discussed below, the Court need not address whether this is an adverse employment action because Plaintiff cannot satisfy the fourth prong of the *prima facie* case.

#### c. Counseling Reports

Plaintiff makes a number of assertions with respect to counselings that he received during the course of his employment. First, he argues that Ralph Cotta, a supervisor, completed four false counselings which were later destroyed when it came to light that they were without basis. Because these reports had no tangible effect on Plaintiff's employment, they do not constitute adverse employment actions. *Dudley,* 989 F.Supp. at 1204 (holding that plaintiff presented no evidence of adverse employment action where plaintiff's supervisor corrected report to reflect plaintiff's work performance). *See also Gupta.*

Plaintiff's claims with respect to other counselings regarding his failure to show up at work and failure to call in late, other non-Black employees committed the same infraction and were not counseled or disciplined. In particular, Plaintiff identifies "Ricky," a hispanic co-worker who was called by management when he did not appear for a meeting. Defendants do not offer any explanation for this alleged disparate treatment and thus, this claim survives summary judgment.

#### d. Demotion to Sales Associate

Plaintiff claims that his demotion to sales associate as the result of his failure to set up advertising properly was discriminatory. A demotion is obviously an adverse employment action. *See Gupta v. Florida Board of Regents,* 212 F.3d at 587. Plaintiff contends that other Team Leads, Luna, Torres, and Massennette, committed the same offenses but were not demoted. In response, Defendant argues that Plaintiff was demoted for a legitimate, non-discriminatory reasons, namely, his poor performance. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Once Defendant has proffered a legitimate reason for its employment decision, the presumption against Defendant is rebutted, and Plaintiff must come forward with *evidence* that the reason is pretextual and that Defendant intentionally discriminated against her because of her age and/or disability. *Id.* at 507, 113 S.Ct. 2742. Plaintiff may accomplish this "either directly by persuading the court that a discriminatory motive more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The civil rights laws, however, do not give the Court the power to substitute its own business judgment for that of the employer. *See Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1501 (11th Cir.1991) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.") (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)). "The pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1332–33 (11th Cir.1998) (citing *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997)).

With respect to the counselings in his employment file, Plaintiff acknowledges that he failed to complete the tasks to which he was assigned and that he did not prepare his department in advance of the advertisements as he was required to do. Nevertheless, other employees were allegedly guilty of the same infractions but were not demoted. Although it is undisputed that Plaintiff received three counselings prior to his demotion in May 1997 because of poor work quality, unreliability and other deficiencies, Plaintiff has come forward with evidence to create a genuine issue of material fact whether some of those counselings were discriminatory. Accordingly, the Motion will be denied as to this claim.

### e. Failure to Promote to Team Lead

Finally, with respect to the failure to promote claim, Plaintiff acknowledges that he never formally applied for the Team Lead position in Apparel when it became available in June 1998. Because Defendant has not put forth any evidence regarding how and if it advertises such positions to current employees, the Court will assume for purposes of this Motion that it uses an informal procedure and was aware of Plaintiff's interest in the position. *See Paldano v. Althin Med., Inc.,* 974 F.Supp. 1441, 1446 (S.D.Fla.1996). Accordingly, Plaintiff need not have applied for the position to establish a *prima facie* case.

Defendant responds that Plaintiff was not qualified for the Team Lead position given his sub-par performance with the Company. In particular, in September 1997, Plaintiff received a performance evaluation that rated his overall performance as a "2" on a scale of 1–5. A "2" indicates performance that does not fully or consistently meet requirements. Plaintiff received another counseling in August 1997 for not completing his work. Although he did not think that the counseling was racially motivated, he did think it was unfair. In March 1998, Plaintiff was written up again for being confrontational with a customer. If this evidence were not tainted by the possibility that some of Plaintiff's "poor performance" was attributable to allegedly discriminatory counselings, the Court would grant Defendants' Motion.[6] In this case, however, although it is a close question, the Court cannot grant the Motion because there is a genuine issue of material fact regarding the legitimacy of Plaintiff's prior counselings.

### 2. WENDY TURNER

The Sports Authority hired Plaintiff Turner as a cashier in its Kendall store in August 1994. Plaintiff resigned in June 1995 because of her pregnancy and returned to work in November 1995. Sports Authority offered Plaintiff a promotion at another store which she declined because she was not satisfied with the pay that accompanied the position, and she did not like some of the employees at the other store. Plaintiff was later promoted to Customer Service Lead in April 1996, a position from which she eventually voluntarily resigned from the position and returned to her position as a cashier. In January 1997, Plaintiff was terminated from Sports Authority allegedly because she did not follow her supervisor's instructions. She brings this suit alleging disparate treatment and wrongful termination.

### a. Work Hours

Plaintiff's first complaint about work hours involves her schedule when she worked as a customer service lead. Although she argues that her white counterpart[7] frequently opened the store, a shift that Plaintiff found more desirable, she acknowledged that everyone's schedule varied and that she frequently opened the store as well. Moreover, Plaintiff has failed to cite any case indicating that the rotation of working shifts amounts to an adverse employment action needed to support a section 1981 claim. Accordingly, that claim will be dismissed.

Plaintiff Turner also complains that her work hours were decreased after she stepped down from the customer service

---

**6.** Moreover, Plaintiff has testified that three managers told him that he would be placed in the position in question. Given that testimony, there is a question for the jury to resolve regarding whether Plaintiff was qualified and reconciling Sports Authority's position that he is not qualified with the alleged statements of its managers.

**7.** Plaintiff also argues that Mark Ackerman, the Sales Manager, favored Allison Adt, another customer service lead, in giving her more opportunities and authority. Plaintiff, however, has failed to demonstrate how those actions had any adverse effect on her employment. For example, Plaintiff has not alleged that she missed out on a promotion because she had not been given the same responsibilities as Adt.

position in 1996. Given that Plaintiff voluntarily left her position, a decrease in hours can only be attributed to her own actions. In addition, she stated at her deposition that she did not want to work at night and on weekends because she wanted to spend more time with her child. Given the limitations that Plaintiff herself placed on her availability, there is no evidence that the decrease in her hours was discriminatory or based on race.

### b. Alleged Harassment

▆ Plaintiff maintains that she was subjected to embarrassment and a lack of respect by her store manager, Michael Thacker, and the sales manager, Mark Ackerman. Plaintiff, however, has failed to bring forth any evidence that this allegedly rude behavior had anything to do with race and was anything more than unprofessional conduct. Indeed, Plaintiff conceded that Thacker treated white employees the same way and that neither Thacker nor Ackerman ever made any racially-based comments to her. Plaintiff's only substantial contention in this area is that other workers told her that Ackerman told racial jokes in the break room and used the word "nigger." These alleged racial comments were not made in Plaintiff's presence and thus did not change the terms and conditions of her employment. Moreover, Plaintiff's only evidence of those comments is her own deposition testimony about her co-employees' statements which is inadmissible hearsay. Alleged racial jokes told outside the presence of Plaintiff clearly do not to rise to the level of severe or pervasive harassment required for a cognizable harassment claim.[8]

### c. Termination

▆ Plaintiff contends that her termination was discriminatory while the Sports Authority maintains that Plaintiff Turner was terminated because she failed to obey her supervisor's order. Plaintiff's supervisor had directed Plaintiff to work with another employee with whom she did not get along. Plaintiff refused. Assuming that Plaintiff can establish a *prima facie* case of discriminatory termination, the Sports Authority has come forward with a legitimate reason for her termination and thus Plaintiff must demonstrate pretext.

Plaintiff admits that she refused to comply with supervisor's order because she contends that she was being asked to work with an employee who was "harassing" her. Plaintiff argues that her allegations of harassment raise a genuine issue of pretext, and thus summary judgment is not appropriate. That argument, however, relies on a determination that Sports Authority knew about the alleged "harassment" or that the behavior was arguable legal harassment. Plaintiff has no such evidence. Plaintiff never specifically stated to her employer that "Corey"[9] was harassing her, and indeed, Plaintiff admits that Corey never did or said anything of a sexual or racial nature. Plaintiff simply believed that her supervisor could not force her to work with someone she did not like. Reinforcing this belief was another manager's accommodation of Plaintiff Turner's request that she not work with Corey. Given these facts, the Court finds that Plaintiff Turner has failed to raise a genuine issue of material fact regarding the legitimate reason proffered by The Sports Authority for her termination, namely insubordination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). Plaintiff has not come forward with any evidence of other non-black employees who disobeyed direct orders and were treated differently, nor has she established any evidence that she had a bona

---

**8.** Plaintiff's claims regarding the Sports Authority's alleged failure to address her complaints of harassment and unfair treatment are derivative of her substantive claims which the Court finds lack merit. Accordingly, the Court does not address the company's com-plaint procedure. Moreover, Plaintiff never complained of any behavior by Corey that was sexually or racially harassing.

**9.** Corey's last name is unknown.

fide harassment complaint against Corey.[10] Accordingly, summary judgment will be granted as to all counts relating to Plaintiff Turner.

### 3. KEISHA FEARON [11]

Plaintiff Fearon began working for Sports Authority as a cashier in October 1996. She alleges that she suffered headaches and stress as a result of working for Defendant and thus was forced to resign from Sports Authority in July 1997. She now seeks damages for disparate treatment and constructive discharge under section 1981.

#### a. Training

Plaintiff Fearon claims that she did not receive proper training for her position as a cashier. Even assuming that a lack of training constitutes an adverse employment action,[12] Plaintiff Fearon has failed to provide any evidence of similarly situated employees who received more training than she did. Ms. Fearon refers to "Ricky" and "Jimmy" as comparators. Those two employees, however, worked as customer service representatives and not as cashiers and thus are not appropriate comparators. Accordingly, Plaintiff cannot establish a *prima facie* case with respect to training.

#### b. Work Hours/Failure to Provide Leave

Plaintiff complains that African–American employees were scheduled for fewer hours as compared with their white co-workers, such as Jimmy, Ricky, Allison Adt and Kelly Murphy. None of these employees are proper comparators vis-a-vis Plaintiff Fearon. Ms. Murphy has more seniority than Plaintiff and Ms. Adt

was a full-time employee unlike Plaintiff who was part-time. In addition, Ms. Murphy was a customer service representative while Ms. Adt worked as a team lead as well as a cashier. Jimmy and Ricky were both assigned to customer service positions and thus did not hold positions equivalent to Plaintiff's. Thus, none of these employees are comparable to Plaintiff. Accordingly, Plaintiff cannot establish a *prima facie* case with respect to her work hours claim.

Plaintiff also generally alleges that she was denied time off to visit her sick grandmother and that other non-black employees were permitted to take leave. When asked at her deposition about white employees taking leave, however, Plaintiff Fearon responded as follows:

> Q. Are you aware of any white cashiers who during your employment at Sports Authority asked for a week off and were granted it?
>
> A. No, not that I know of, no.
>
> Q. Are you aware of any white employees who asked for more than a few days off and were granted it?
>
> A. No, not that I know of, no.

(Fearon Dep. at 123). Given Plaintiff's own testimony, it is clear that she does not have any evidence of non-black employees being treated differently under the same circumstances and thus she cannot state a *prima facie* case with respect to this allegation.

#### c. Miscellaneous Allegations

Plaintiff also alleges that her supervisor, Allison Adt, subjected her to demeaning and nasty behavior. In addition, she complains that she was asked to work the cash

---

**10.** When asked in deposition what the problem with Corey was, Plaintiff simply complained that she could not get along with him and could not work with him. Plaintiff could not recall Corey making any comments that were racial in nature. (*See* Turner Dep. at 147–152).

**11.** Count X was voluntarily dismissed on January 7, 2000, and thus, the Court will only address Counts IX and XI in this motion.

**12.** Plaintiff has provided no evidence that she was denied a promotion or any benefit of employment because she allegedly did not receive proper training.

register at the back of the store instead of the front of the store. Plaintiff has made no showing that these actions or decisions were cognizable adverse actions and thus, they are not actionable. In addition, Plaintiff alleges that black workers were told to look busy even if they had nothing to do. Even if such statements were made to black employees, they are not sufficient to constitute adverse employment actions and are not cognizable claims.[13]

#### d. Constructive Discharge

 Finally, Plaintiff Fearon argues that her allegedly intolerable working conditions began to make her physically ill and that she consequently suffered from stress and headaches.[14] She also stated at deposition that she was not getting enough hours or work. As a result of these two reasons, she claims that she was forced to resign in July 1997. Given that Plaintiff has failed to demonstrate that any stress or headaches that she suffered were the result of race discrimination, the Court cannot find that her termination, even if it were a constructive discharge, was for discriminatory reasons. Indeed, many jobs and workplaces cause workers to feel stress and headaches. Such conditions hardly rise to the intolerable level necessary for a constructive discharge claim. Moreover, Plaintiff has failed to come forward with sufficient evidence to show that the conditions at Sports Authority were objectively so intolerable that she was forced to resign. *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th

Cir.1997). Accordingly, Defendants' Motion with respect to Plaintiff Fearon must be granted.[15]

#### 4. OLIVER HANLEY [16]

Plaintiff Oliver Hanley is a former employee of the Sports Authority. He was initially hired as Merchandise Manager. He transferred to a number of different locations. After two years, he was terminated on December 9, 1998.

#### a. Failure to Train

In order to prevail on this claim, Plaintiff Hanley must be able to demonstrate that the alleged failure to train had an adverse impact on a substantial term or condition of his employment. Although he complains that he was not given the same responsibilities as other managers in that he did not know the security code and did not have store keys, Plaintiff has failed to come forward with any evidence that those differences or any alleged lack of training had an impact on a substantial term or condition of his employment. For example, Plaintiff has not alleged that his poor performance resulted from a lack of training. Indeed, Plaintiff contends that his performance was not poor at all. Nor has Plaintiff come forward with any evidence that he applied for a promotion or other benefit and was denied as a result of not receiving adequate training or because he did not have the same responsibilities that other managers had. Accordingly, the court finds no adverse employment action

---

**13.** In addition, Plaintiff's allegations that Sports Authority did not address her complaints regarding this myriad of miscellaneous slights cannot constitute a claim because it is derivative of the claims which the Court finds cannot survive summary judgment.

**14.** Plaintiff also appears to attempt to state a separate claim that Sports Authority caused her illness and headaches. While such allegations may be relevant to her claim for damages or even her claim of constructive discharge, it is not a discrimination claim in and of itself.

**15.** Plaintiff also makes a generalized accusation that Sports Authority did not hire blacks for top management positions. Plaintiff offered nothing in response on Defendants' Motion in this regard. Moreover, there is no evidence that Plaintiff Fearon ever applied for a promotion so the Court will not address that claim in this Order.

**16.** Hanley also alleges a failure to promote claim, but he fails to address Defendants' arguments in their Motion to dismiss, and thus that claim is subject to dismissal.

with respect to Plaintiff alleged lack of training and that claim is dismissed.[17]

### b. Refusal to Give Time Off

Plaintiff alleges that he was not permitted to use his sick days to care for his sick daughter or to attend medical appointments regarding a work-related injury. Although Plaintiff alleges that the other non-black employees were permitted to use their sick days as they saw fit, he fails to offer any evidence regarding these unnamed comparators. In addition, it is undisputed that Sports Authority gave Plaintiff time off to attend doctors' appointments as needed. Accordingly, the Motion must be granted with respect to this claim because he has failed to state a *prima facie* case.[18]

### c. False Evaluations

Plaintiff claims that he received false evaluations and that he was disciplined for conduct that non-black employees engaged in and for which they were not disciplined. Plaintiff alleges that this disciplinary action eventually resulted in his termination. In support of these allegations, Plaintiff points to two alleged comparators, Laurie Bretz and Angela Stifflemire. Plaintiff contends that that these two employees did not perform the tasks assigned to them, but only he was counseled and eventually terminated.

■ Defendants argue that the giving of false evaluations does not constitute an adverse employment action. This Court disagrees. The Eleventh Circuit has recently defined an adverse employment action as "an ultimate decision, such as dis-charge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Board of Regents,* 212 F.3d at 587 (citing *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3rd Cir.1997)). Clearly, false negative evaluations can have an impact on an employee's status and in this case, Defendants state that "poor performance" is the reason for Plaintiff Hanley's termination. Under those circumstances, poor evaluations may certainly constitute an adverse employment action.

■ Defendants claim that Plaintiff has no evidence to support his claim that his two comparators were similarly situated but were not disciplined for like conduct. Plaintiff has attached to his opposition copies of display signs listing certain items and their prices with various dates on the signs. From this evidence, the Court is presumably being asked to conclude that Stifflemire did not complete the tasks assigned to her. Even if the exhibit were admissible evidence, it does not support the inferential steps that Plaintiff wishes the Court to take. Copies of dated sale price signs do not make it any more likely that Stifflemire failed to update her signs as required. Plaintiff likewise contends that Laurie Bretz failed to change prices and was not disciplined in any way. In support of his claim, Plaintiff provides the Court with another composite exhibit which indicates price changes for May 26, 1998. Plaintiff provides no evidence that these price changes were Bretz's responsibility or that she failed to enter them in a

---

17. Plaintiff also argues that he was stripped of his managerial duties while he was on light-duty. In particular he was told that he need not attend manager meetings. Plaintiff has failed to come forward with any evidence that other managers on light duty attended manager meetings. Nor has he shown that the company's alleged adverse action was taken on the basis of his race rather than in retaliation for filing a workers' compensation claim or for any legitimate reason.

18. Plaintiff also alleged in his complaint that he was required to withhold sick leave information from other black employees, specifically, Plaintiff Linda Jones. Defendants argue that Plaintiff has not articulated how he was harmed by this requirement and thus there is no disparate treatment. Plaintiff offered no response to Defendants' Motion on this point, and thus it is apparently conceded.

timely fashion. Nevertheless, Plaintiff has testified that both Stifflemire and Bretz engaged in the same conduct that he did but were not treated the same way he was. Thus, it is up to Defendant, who is moving for summary judgment, to show that there is no genuine issue of material fact that both Stifflemire and Bretz are not similarly situated.

Plaintiff also takes issue with the merchandising evaluations issued in November 1998 because he received a lower overall rating that his white counterparts. A review of the documents themselves reveals that Plaintiff was given a "fair" rating because he scored in the seventieth percentile (72%) while Stifflemire and Bretz were both rated as "good" because their scores were in the eightieth percentile. While it is true that Stifflemire and Bretz received only a few more positive scores then Plaintiff thus placing them in the eightieth percentile, Plaintiff has failed to show that any non-black employee with a 72% score was rated as better than "fair," nor has he provided any evidence that black employees who scored in the eightieth percentile were rated less than "good." Thus, there is no evidence to support his claim of race discrimination on these grounds.

Finally, Hanley complains that he was written up for missing a meeting. Subsequently, another manager missed a meeting because she overslept and was not written up. Plaintiff pointed out this disparity to his supervisor Quesada who changed his counseling form to an advisory talk. Plaintiff has made no showing that that advisory talk had any adverse impact on his employment at Sports Authority and thus there is no showing of adverse action to support a claim under § 1981 on that basis alone.[19] Consequently, the Motion for summary judgment will be granted as to these claims except as to the counseling that Plaintiff received for not changing the signs and prices.[20]

### 5. LINDA JONES[21]

Ms. Jones has worked for Sports Authority for over four years. She was originally hired as a cashier and was subsequently promoted to a Lower Office Lead position. Plaintiff still works for Sports Authority as the Hardlines Manager of Team Sports and is currently located at the Pembroke Pines store.

#### a. Availability and Sick Leave

Plaintiff complains that she was not permitted to know how much sick leave she had because her supervisor, Gary Muka, did not want her to "abuse" it. Even assuming that this incident rises to the level of an adverse employment action, Plaintiff has no evidence that white employees were treated differently:

Q. Are you aware of any white employee of the Sports Authority who inquired of Mr. Muka how much sick time they had?

A. No. sir.

---

**19.** Plaintiff also fails to address Defendants' argument regarding his allegation of labeling and name-calling. In particular, Plaintiff alleges that he was called a "delegator" and that David Trujillo, another merchandise manager, told him to "go back where he came from." At the same time, Plaintiff admitted at deposition that no other employee ever said anything to him of a racial nature. Even assuming that one employee made one remark that was arguably racial in nature is not sufficient to state a claim against Defendants. *See Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 (11th Cir.1998) (holding that racial comments that were far removed from decision at issue were insufficient to establish prima facie case).

**20.** In his response to Defendants' Motion for Summary Judgment, Plaintiff raises the issue of his termination. That is not a claim before this Court and in fact is the subject of a separate lawsuit between these parties. Accordingly, the Court does not address this issue in this Motion.

**21.** Plaintiff Jones voluntarily dismissed her failure to promote claim, and thus it will not be discussed in this order.

Q. Did Mr. Muka, in general, not like when employees took sick time, to your knowledge?

A. Yes, sir.

(Jones Dep. at 125). Although Plaintiff testified that Muka complained about black employees calling in sick, he did so right after being made aware that the employee was not coming to work. Plaintiff testified that she had never been present when a non-black employee called in sick so she did not know how Muka reacted to that situation.

Plaintiff also alleges that Muka threatened to fire her if she did not work nights. Plaintiff was unwilling to work at nights because she had family responsibilities. While this may have resulted in an inconvenience to Plaintiff, she has come forward with no evidence that white employees were treated differently when it came to scheduling decisions. In fact, it appears from Plaintiff's deposition testimony that she was more concerned about the way Mr. Muka told her that she would have to work nights rather than the actual scheduling itself. In any case, there is no evidence to support a claim for racial discrimination based on this incident.

### b. Hostile Environment

Plaintiff also complains that she was harassed by her supervisor, Gary Muka. In support of this claim, Plaintiff Jones testified at her deposition that another employee told her that Muka had said that he was going to try to get her fired for being out on workers' compensation leave. Even assuming that Plaintiff could overcome the hearsay problems with such evidence, the statement does not give rise to any inference of race discrimination which is the only basis for Plaintiff's claim under § 1981.

### c. Miscellaneous incidents

When Plaintiff was promoted to Lower Office Lead, she was not given the combination to the store safe. Plaintiff claims that as a matter of Sports Authority policy, she should have been given the combination of the safe and that the failure to do so is based on her race. Her supervisor, however, stated that it was a management decision not to give her the combination. Rebutting the inference (if there is one) that this decision had anything to do with her race is the fact that another Lower Office Lead, Twyla Thompson, an African-American, did have the combination to the safe.

Second, Plaintiff claims that her supervisor, Gary Muka, also allegedly embarrassed and demeaned her by inspecting her work area and asking co-employees if Plaintiff knew what she was doing. Plaintiff was not present for this conversation and thus the claim is based upon hearsay. Even if the evidentiary problems are put aside, however, there has been no showing that the incident was racially motivated.

Third, at an employee meeting, Muka allegedly told Plaintiff to "shut up" because he was trying to talk. Plaintiff claims that other white employees were talking and they were not reprimanded. Assuming that Plaintiff's testimony is true about this incident, that incident still does not rise to the level of an adverse employment action or a substantial change in the terms and conditions of her employment because Plaintiff has not shown that the "shut up" statement was anything more than a one-time comment that had no long-term impact on her employment.

Plaintiff makes numerous other allegations of rude and demeaning behavior by supervisor Muka, but none of the comments he made were ever related to race and none resulted in any type of adverse employment action. Muka also told Plaintiff that she would be promoted "over his dead body." In addition, he ordered Plaintiff to change a customer's golf cleats and threatened to fire her for insubordination if she refused. Another employee, however, refused to change the cleats and was not threatened. It is undisputed that no action was ever taken

against Plaintiff for this incident. Moreover, threats of termination do not rise to the level of adverse action. *Mistretta v. Volusia County,* 61 F.Supp.2d at 1260. Thus, there is no required adverse action to state a *prima facie* case.

Another claim on which Plaintiff relies is an incident involving the dress code. She was sent home one day for not wearing the right type of shorts while a white employee, Ralph, wore the wrong shorts and was not sent home. Plaintiff also contends that Muka yelled at black employees when the registers were down but did not yell at white employees. Finally, Plaintiff complains that she was asked to stay late to talk to a supervisor when she had already punched out. She refused, but was not disciplined for this incident. Again, Plaintiff has failed to show the level of substantiality required to establish that these were adverse actions. *See Wideman.* Thus, the Motion will be granted as to these claims.

## 6. ANTHONY MALONE

Plaintiff Malone began his employment with Sports Authority in January 1996 as a receiving clerk. In July 1996, Plaintiff was promoted to Team Lead in Receiving. After his hours were reduced, Plaintiff transferred to another store in July 1997. In 1998, Plaintiff was promoted to Team Lead in Apparel.

### a. Inadequate Training

Plaintiff complains about the training he received as Team Lead in Receiving. In particular, he contends that a white employee, Tracy Anderson, was thoroughly trained as a receiving clerk while he was denied training opportunities. Plaintiff, does not allege that this disparity was as the result of race because he testified that the store manager was personally interested in Anderson. Accordingly, any disparate treatment was on the basis of sex and not race. Moreover, Plaintiff makes no allegation that the alleged lack of training

had any impact on the terms and conditions of his employment.

### b. Failure to Promote

Plaintiff raises a number of promotion issues. In order to prevail on this failure to promote claims, Plaintiff must establish a *prima facie* case consisting of four elements: (1) he is a member of a protected class; (2) he was qualified for and applied for the position; (3) he was rejected despite his qualifications; and (4) after rejection, his employer continued to seek other applicants or filled the position with a person outside of the protected class with equal or lesser qualifications. *See Walker v. Mortham,* 158 F.3d 1177, 1192 (11th Cir.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999); *Paldano,* 974 F.Supp. at 1446.

Plaintiff complains about a promotion that he did not receive that arose while he was at the Kendall store. In that instance, Patrick Brimo was promoted to Merchandise Team Lead, a position for which Plaintiff alleges that Brimo was less qualified than Plaintiff. In support of his lesser qualifications assertion, Plaintiff simply points out that he trained Brimo regarding the receiving department, an area that Brimo had to understand to be a Merchandise Team Lead. Although Plaintiff may have had to train Brimo in one facet of his job, it is undisputed that Brimo had more seniority at Sports Authority than Plaintiff and that Brimo had been working in merchandising while Plaintiff was working in receiving. Plaintiff cannot dispute these qualifications and thus this failure to promote claim cannot survive summary judgment.

Plaintiff claims that after he was transferred to the Sawgrass Mills store he was told that he would be promoted to Team Lead when the position became available. Contrary to that promise, another employee, Derm, was promoted to the position, but Plaintiff stated at deposition that he thought it was because he and the manager were on the same softball team. With

**1370**

respect to the position at the Sawgrass Mills store, Plaintiff similarly fails to rebut Sports Authority's proffered reason for its decision, namely that Derm was more qualified because he had merchandising experience, had been with the company longer, and was already a Team Lead.

■■■ Plaintiff's case is much stronger when it comes to the promotion of a new hire, Alex Avalives, who was promoted to the Merchandise Team Lead position at the Kendall store when Brimo left. Plaintiff claims that he was more qualified than Avalives and clearly he had more seniority. Defendants' only argument is that Plaintiff's testimony regarding his training of Avalives is inconsistent with other testimony where he says the store managers were secretly training Avalives. Nevertheless, Defendants have failed to come forward with any evidence to support their unnamed reasons for promoting Avalives instead of Plaintiff. Accordingly, the Motion must be denied as to this claim.

### c. Reduction in Hours

In 1997, Plaintiff's hours were cut allegedly because the Kendall store was "slow." At the same time, however, Plaintiff argues that another employee who was only part-time was being given 40–45 hours per week. Moreover, Plaintiff claims that he was the only Team Lead whose hours were cut. As a result, Plaintiff sought a transfer to the Sawgrass Mills store where he would have full-time hours. Defendant argues that the transfer rectified Plaintiff's complaint about hours, but that does not necessarily defeat his claim regarding discriminatory treatment. Obviously, if the reduction in hours was as the result of a racial bias, the fact that Plaintiff could mitigate his damages by requesting a transfer to a more inconvenient worksite does not absolve the company of its liability for alleged discrimination. Moreover, Defendants have not come forward with any evidence to support their claim that business was slow and that was the reason for the reduction in hours. Nor have they shown that other employees experienced similarly reduced hours. Accordingly, the motion will be denied as to this claim.

### d. False Evaluations/Discipline

Plaintiff alleges that he was disciplined for being late while a white fellow employee was not written up. Another allegedly discriminatory discipline incident arose when Plaintiff and another black employee were written up for standing around while two white employees doing the same thing were not disciplined. Again, Defendants contend that it is Plaintiff's burden to prove that his comparators were similarly situated to him. Nevertheless, the Court finds that on a motion for summary judgment, the moving party must come forward with evidence to show that there is *no genuine issue of material fact regarding* the similarity of the alleged comparators once they have been identified by a plaintiff. In this case, Defendants have not demonstrated any differences between those disciplined and those who were not. Accordingly, the Court finds that there is at least a genuine issue of material fact in that regard given that there is no evidence to contradict Plaintiff's testimony that the employees were engaged in the exact same conduct at the same time and the white employees were not disciplined.

### e. Stray Comments

■■■ Manager Greg Roberts allegedly once called Plaintiff a "spook nigger" and was merely asked to apologize to Plaintiff. In addition certain other employees called Plaintiff "stupid." The comments about being "stupid" were not racially based and clearly are not the foundation of any § 1981 claim. With respect to Roberts's comment, although the statement was obviously of a racial nature, it was a solitary incident by a manager who is not alleged to have made any decisions affecting Plaintiff's employment. Accordingly, it does not serve as a basis for a § 1981 claim.

### f. Miscellaneous Complaints

Plaintiff complains about a variety of perceived injustices: he was not allowed to eat on the sales floor; black employees were always forced to punch out for lunch breaks while white employees were not; white employees were permitted to take 2-hours lunch breaks; and Plaintiff was told to wear his Sports Authority shirt when stocking during morning hours even though it was not customary and other non-black employees were not told to wear their shirts. Although these may be examples of disparate treatment, Plaintiff does not contend that he was subject to any formal discipline as a result of these allegations and none of them constitute an adverse employment action. Accordingly, the Motion is granted as to those claims.

## IV. *CONCLUSION*

For the reasons set forth in detail above, it is hereby

ORDERED that:

1. Defendants' Motion for Summary Judgment as to Count I (Oliver Hanley) [DE–123] is GRANTED in part, and DENIED, in part. The Motion is DENIED as to Plaintiff Hanley's claims for unfair discipline regarding changes in signs and prices. The Motion is GRANTED in all other respects;

2. Defendants' Motion for Summary Judgment as to Count V (Richard Hudson) [DE–95] is GRANTED, in part and DENIED, in part. The Motion is GRANTED with respect to Hudson's allegations regarding a lack of assistance, his subsequent counselings for poor performance, and his demotion;

3. Defendants' Motion for Summary Judgment as to Counts VI and VII (Anthony Malone) [DE–91] is GRANTED, in part and DENIED, in part. It is DENIED with respect to Malone's claims regarding a reduction in hours and Defendants' failure to promote him to Team Lead in 1998. The Motion is GRANTED in all other respects.

4. Defendants' Motion for Summary Judgment as to Count VIII (Plaintiff Linda Jones) [DE–51] is GRANTED;

5. Defendants' Motion for Summary Judgment at to Counts IX, X, and XI (Keisha Fearon) [DE–116] is GRANTED;

6. Defendant's Motion for Summary Judgment as to Counts XII and XIII (Wendy Turner) [DE–135] is GRANTED;

7. Defendant's Motion for Attorneys' Fees on Plaintiff Hudson's Failure to Promote Claim [DE–135] is DENIED WITHOUT PREJUDICE;

8. Defendants' Motion to Strike [DE–161] is DENIED;

9. Plaintiff Fearon's Motion for Extension of Time [DE–120] is GRANTED, *nunc pro tunc;* and

10. Defendants' Motion to Compel Plaintiffs to Pay Mediation Costs and Fees [DE–194] is hereby REFERRED to Magistrate Judge Barry L. Garber for a hearing and appropriate resolution pursuant to Rule 1 of the Magistrate Rules of the Southern District of Florida.